**CHICAGO HMO, Plaintiff,**

v.

**TRANS PACIFIC LIFE INSURANCE CO., Defendant.**

**No. 84 C 2791.**

United States District Court, N.D. Illinois, E.D.

Sept. 9, 1985.

---

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Plaintiff Chicago HMO, Ltd. ("Chicago HMO") filed its six count complaint alleging that defendant Trans Pacific Life Insurance Co. ("Trans Pacific") breached a contract of specific excess insurance between Chicago HMO and Trans Pacific by refusing to pay benefits during the first 12 months after the expiration of the applicable policy (Count I), and by failing to give timely notice of Trans Pacific's decision not to renew the policy (Count II). Count III of the complaint seeks a declaration that the insurance contract was at all relevant times valid and enforceable and that Trans Pacific must pay Chicago HMO for both past and anticipated claims which are allegedly covered under the policy.

In Count IV of the complaint, which is directed against defendant Harry M. Brewer individually ("Brewer"), Chicago HMO alleges that Brewer was the employee or agent of defendant Brewer Insurance Agency, Inc. ("Brewer Insurance"), a California corporation, and was at all relevant times acting within the scope of his agency or employment. Chicago HMO seeks to hold Brewer individually liable for breach of an agency agreement or of a contract to procure insurance or in tort for negligent procurement of insurance.

In Count V, Chicago HMO attempts to state a cause of action against Trans Pacif-

ic for breach of the common law duty of good faith and fair dealing, thereby allegedly entitling Chicago HMO to compensatory damages, attorneys' fees and costs, and punitive damages in the amount of $346,361.83.

In Count VI, Chicago HMO seeks to invoke the civil remedy contained in the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* Chicago HMO alleges that defendants Brewer and Trans Pacific formed an "enterprise" under the RICO statute and committed two acts of mail fraud by sending separate signed copies of the insurance policy through the mails with the intent to defraud Chicago HMO. These acts of mail fraud allegedly constituted a "pattern of racketeering activity," thereby entitling Chicago HMO to treble damages from all three defendants pursuant to RICO.

Each of the three defendants has filed a joint motion to dismiss Counts IV, V, and VI of the complaint for failure to state a claim upon which relief can be granted. The jurisdiction of this Court is grounded upon both diversity of citizenship and federal question jurisdiction. For the reasons stated below, the motion to dismiss is denied as to Count IV, but granted as to Counts V and VI of the complaint.

*Facts* [1]

In October, 1982, Chicago HMO, a health maintenance organization, sought to obtain insurance for losses it would incur in paying for covered claims of its health plan members. Defendant Brewer agreed to serve as Chicago HMO's insurance agent to obtain such insurance for a period of approximately one year. Chicago HMO instructed Brewer that it required insurance which covered losses incurred during the period of the contract regardless of when the bills for such claims were actually paid.

Brewer obtained a policy of insurance for Chicago HMO issued by Trans Pacific for a period commencing November 10, 1982 and ending September 30, 1983. The insurance

contract, insures Chicago HMO for specific losses incurred during the policy period and defines specific losses as "the total amount of money you (Chicago HMO) have actually paid during the policy period, and during the first twelve months thereafter, to or on behalf of any one health plan members."

On September 27, 1983, three days prior to the renewal date of the contract, Trans Pacific advised Chicago HMO, for the first time, that it would not renew the policy. This late notice was contrary to the terms of the contract which required Trans Pacific to give written notice of its refusal to renew at least 31 days prior to the renewal date. Chicago HMO was then forced to procure other insurance for the period commencing October 1, 1983.

Consistent with its normal billing practices, Chicago HMO continued after September 30, 1983 to review and pay bills for health care services which were incurred by various health plan members during the policy period. Trans Pacific maintained it was not obligated to indemnify Chicago HMO for claims paid after September 30, 1983. Trans Pacific thus refused to pay claims totalling $346,361.83, contending that its policy only covered claims incurred and paid during the policy period and that the insertion of the provision covering claims paid for twelve months after the policy expired was an inadvertent clerical error. Chicago HMO then commenced this action with the filing of its six count complaint.

### Discussion

*Count IV—Brewer's Failure to Adequately Procure Insurance*

In Count IV of the complaint, Chicago HMO alleges that defendant Brewer is personally liable for his failure to procure adequately a policy of insurance having certain provisions according to the directions given to him by Chicago HMO. Although acknowledging the liberal notice

---

**1.** Because, on a motion to dismiss for failure to state a claim, all facts alleged in the complaint and inferences therefrom must be taken to be true, *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the facts stated in this section are those set forth by Chicago HMO.

pleading standard set forth in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), defendants argue that Count IV must be dismissed for several reasons. First, defendants contend that Count IV is deficient because it does not specify whether Brewer's alleged failure to procure insurance adequately constitutes a cause of action for negligence or breach of contract. Second, defendants claim that, under either theory, Count IV is deficient because it insufficiently pleads the requisite elements of any state law cause of action. Finally, defendants assert that because the complaint alleges that Brewer at all times was acting as the agent and employee of Brewer Insurance, and because the general rule is that an agent is not personally liable for a breach of contract executed by himself and a third party where the agent's principal has been disclosed to the third party, Count IV is deficient because it fails to specify "why this case should not be governed by the general rule of nonliability." (Defendants' Brief at 5.)

■ This Court has examined the allegations of Count IV of the complaint and finds that they are adequate to meet the notice pleading standard of *Conley, supra.* The complaint clearly states that Brewer acted as Chicago HMO's insurance agent but failed to procure a policy that met its requirements, particularly that the policy cover claims incurred in the policy period regardless of when paid. Count IV is in the alternative to Counts I and III, the counts based on breach of contract. Brewer can be held liable personally only if Trans Pacific prevails on those counts: *i.e.,* if the court finds that the contract does not cover losses both incurred and paid during the policy period, then Brewer may be held liable personally for breach of his duty to procure the coverage sought by Chicago HMO. Whether Brewer can be held individually liable because he was acting solely within the scope of his employment is a question of fact that must be resolved after trial. Accordingly, the motion to dismiss Count IV of the complaint is denied.

*Count V—Bad Faith Refusal to Pay Losses*

In Count V, Chicago HMO seeks attorneys' fees, punitive damages, and "such other and further relief as justice may require" for Trans Pacific's alleged bad faith refusal to pay claims covered by the express terms of the contract. Defendants argue that Count V is preempted by Section 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, ¶ 767, which provides in pertinent part:

> Section 155.   Attorney fees.
>
> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorneys fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> (a) 25% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> (b) $5,000;
>
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

Courts in this district are divided on the preemptive effect of Section 155. Some hold that Section 155 preempts common law actions seeking both compensatory and punitive damages for breach of the duty of good faith and fair dealing. *Zakarian v. Prudential Ins. Co. of America,* 626 F.Supp. 420, 422 (N.D.Ill.1984) (Grady, J.); *Abbott Laboratories v. Granite State Ins. Co.,* 573 F.Supp. 193 (N.D.Ill.1983) (Shadur, J.); *Strader v. Union Hall, Inc.,* 486

F.Supp. 159 (N.D.Ill.1980) (Aspen, J.).[2] Others hold that Section 155 does not preclude a common law claim against an insurer for bad faith. *Roberts v. Western-Southern Life Insurance Co.,* 568 F.Supp. 536 (N.D. Ill.1983) (Marshall, J.). Judge Moran of this District has forged a path between these two positions by finding that Section 155 preempts punitive damages but not compensatory damages. *Barr Co. v. Safeco Ins. Co. of America,* 583 F.Supp. 248 (N.D. Ill.1984). In reaching this result, Judge Moran reasoned that Section 155 allows for the recovery of attorneys' fees, costs, and a specified amount not to exceed $5,000:

> This amount is derived from the recovery allowed under the contract, *see* Ill.Rev. Stat. ch. 73, § 767(a), and a settlement offered by the insurer, *see id.* at § 767(c). It is in no way linked to any injuries incurred as a result of the insurer's refusal to make a payment and cannot be said to be a compensatory remedy. Preemption of compensatory damages is not warranted by the section. See *Hoffman v. Allstate Insurance Co.,* 85 Ill.App.3d at 635, 40 Ill.Dec. at 928, 407 N.E.2d at 159.

583 F.Supp. at 255.

■ This Court is persuaded by the approach taken by Judge Moran and thus holds that Section 155 preempts the recovery of punitive but not compensatory damages. Defendants correctly point out that Chicago HMO has neither mentioned Section 155 of the Illinois Insurance Code in the complaint nor has it asked for compensatory damages in Count V of the complaint. Defendants mistakenly argue, however, that compensatory damages may not be awarded under Count V because the measure of any award of compensatory damages is confined to the amount which is found due and owing under the breach of contract counts, Counts I and II. Compensatory damages for bad faith breach of the duty of fair dealing may include other items as well which are not derived solely from the contract, such as compensation for the cost of procuring other insurance or for the necessity of being self-insured. Because Chicago HMO will be required to re-plead Count V in any event to specify that its claim derives from Section 155 and to limit the recovery to compensatory damages and those damages specified in Section 155, Count V of the complaint is dismissed. Chicago HMO is granted leave to file an amended Count V consistent with this opinion within 30 days.

## RICO—Count VI

Defendants contend that Count VI of the complaint fails to state a cause of action under RICO for several reasons: (1) Chicago HMO has failed to plead fraud with sufficient particularity; (2) Chicago HMO has failed to plead the existence of a separate "person" and an "enterprise" as required to establish liability under RICO; (3) Chicago HMO has failed to allege that any of the defendants acquired or maintained an "interest or control of" the RICO enterprise through a pattern of racketeering activity; and (4) Chicago HMO has not alleged any facts which would suggest injury by reason of the violation rather than by reason of the predicate offenses and therefore has failed to plead injury cognizable under RICO.

The parties fully briefed these arguments before the decision of the Seventh Circuit in *Haroco v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), was handed down. *Haroco,* which was affirmed by the Supreme Court, — U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), disposes of several of the arguments raised by defendants.

■ Defendants contend that fraud is not pled with sufficient particularity in two respects: first, they argue that plaintiff has not specified the factual basis for the alleged conclusory allegation that the defendants acted with the requisite intent to defraud; second, they argue that plaintiffs

---

2. The First District of the Illinois Appellate Court also has held that Section 155 preempts both compensatory and punitive damages. *Kin-* *ney v. St. Paul Mercury Insurance Co.,* 120 Ill. App.3d 294, 75 Ill.Dec. 911, 458 N.E.2d 79 (1st Dist.1983).

have failed to state the two alleged predicate offenses of federal mail fraud with the specificity that would be found in a criminal bill of particulars, rendering the RICO claim insufficient as a matter of law under *Bache Halsey Stuart Shields, Inc. v. Tracy Collins Bank & Trust Co.*, 558 F.Supp. 1042 (D.Utah 1983). This latter contention was specifically considered and rejected by the Seventh Circuit in *Haroco*. After an exhaustive analysis of the Bache court's rationale, the Seventh Circuit held that allegations in a civil complaint under RICO need not be as specific as a criminal bill of particulars. *Id.* at 403–04. As to the former contention, the Seventh Circuit in *Haroco* also addressed the defendants' argument that fraudulent intent had not been pled with particularity and rejected that argument as well. After an examination of the complaint in this case, it is apparent that the Seventh Circuit's analysis in *Haroco* is pertinent here:

> In this case, the complaint adequately specified the transactions, the content of the allegedly false representations, and the identities of those involved. In addition, the identification of the transactions and the description of the alleged scheme to defraud put defendants on fair notice of the time and place of the alleged false representations.

*Haroco, supra,* 747 F.2d at 405. Thus, this Court also finds that fraud is pled adequately and satisfies the requirements of Fed.R.Civ.P. 9(b).

■ Similarly, *Haroco* disposes of the defendants' contention that plaintiff must plead a "racketeering injury" separate and apart from the injury incurred by reason of the predicate offenses. The court in *Haroco* specifically held that a "civil RICO plaintiff need not allege or prove injury beyond an injury to business or property resulting from the underlying acts of racketeering." *Haroco, supra,* 747 F.2d at 398.

■ *Haroco* lends some support to defendants' argument, however, that the RICO allegations must be dismissed because plaintiff has not alleged the existence of both a "person" and an "enterprise." As plaintiff concedes, defendants correctly argue that Section 1962(b) requires the pleading of the existence of an enterprise as well as of a person who acquires an interest in or control of the enterprise.[3] Only the "person" is liable under RICO.

Plaintiff here has identified the "enterprise" as consisting of the union of Brewer and Trans Pacific to defraud the plaintiff. Both Brewer and Trans Pacific are defendants in this case. Defendants argue that a defendant cannot also constitute the enterprise and have cited numerous cases for the proposition that a defendant cannot be both the "person" and the "enterprise" required to state a civil RICO claim. Indeed, the Seventh Circuit so held in *Haroco, supra,* in which the court ruled that a corporation may not be held liable under Section 1962(c) for conducting its own affairs through a pattern of racketeering activity, although it might be held liable under Section 1962(a) if it received the proceeds from that activity and if it could be held liable as a principal for those acts.

Nonetheless, the analysis does not end here, for the issue as framed by the defendants is somewhat simplistic. The question in this case is not whether a defendant can also constitute an "enterprise" but whether the alleged "enterprise" has a separate and sufficiently lasting identity apart from the "person" or "persons" who allegedly receive any income from it (§ 1962(a)), who have any interest in it (§ 1962(b)), or who are employed or associated with it (§ 1962(c)). The Seventh Circuit's decision in *McCullough v. Suter*, 757 F.2d 142 (7th Cir.1985), exemplifies this point because in that case the court held that a sole proprietorship could be an "enterprise" with which its proprietor could be "associated" because the proprietor "had several people working for him; this made his company

---

**3.** "Enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

an enterprise, and not just a one-man band, and all section 1962(c) requires, as we said in *Haroco,* is 'some separate and distinct existence for the person ... and the enterprise....' " 757 F.2d at 144.

Thus, in this case, if Brewer and Trans Pacific were involved in a fairly long term, continuing relationship that had some identity distinct from Brewer as an individual broker and Trans Pacific as an insurance company, it is conceivable that such an entity could constitute an "enterprise" under Section 1962. But such an entity is not alleged in the complaint. Nor could such an entity be inferred under the facts set forth in the complaint because, as pled, the "enterprise" consisting of Brewer and Trans Pacific does not have a separate economic existence apart from the alleged pattern of racketeering activity.

In *United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246, the Supreme Court noted:

> The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the activity in which it engages.

In *Kimmel v. Peterson,* 565 F.Supp. 476 (E.D.Pa.1983), the court noted that the RICO "enterprise" must be an ongoing structure having an economic existence separate from the pattern of racketeering activity. 565 F.Supp. at 497.

In this case, the "enterprise" characterized as a "union" of Brewer and Trans Pacific allegedly existed solely to defraud Chicago HMO. Thus, the "enterprise" alleged here is indistinguishable either from the "persons" or from the "pattern of racketeering activity." All three elements of a civil RICO action must be pled separately in order to state a claim upon which relief can be granted.

To illustrate these principles, in this case if plaintiff had identified Trans Pacific as the "enterprise" and Brewer as the "person" liable, or *vice versa,* or if sufficient allegations existed that demonstrated that the Brewer-Trans Pacific alliance constituted a separate economic identity apart from the pattern of racketeering activity alleged

in this case, a civil RICO claim under Section 1962(c) would have been stated. Such allegations are not made. Accordingly, Count VI of the complaint is dismissed for failure to state a claim, but Chicago HMO is granted leave to amend Count VI to state a claim in accordance with this opinion within 30 days if it can do so consistent with its good faith obligations under Fed.R. Civ.P. 11.

### *Conclusion*

For the reasons stated above, the motion to dismiss Count IV is denied, and the motion to dismiss Counts V and VI is granted. Chicago HMO is granted 30 days from the date of this opinion to file an amended complaint amending Counts V and VI if it can do so consistent with the guidelines set forth in this opinion and consistent with its good faith obligations under Rule 11. It is so ordered.