**PANDICK, INC., Plaintiff,**

v.

**Patrick J. ROONEY, et al., Defendants.**

**CHAS. P. YOUNG COMPANY, et al., Counterplaintiffs,**

v.

**PANDICK, INC., et al., Counterdefendants.**

**No. 85 C 6779.**

United States District Court, N.D. Illinois, E.D.

July 13, 1988.

Barry T. McNamara, Arthur Don, Jean Maclean Snyder, D'Ancona & Pflaum, Chicago, Ill., Daniel S. Mason, Michele C. Jackson, Furth, Fahrner, Bleumle & Mason, San Francisco, Cal., for plaintiff.

Steven E. Gilman, Georgann Joseph, D'Ancona & Pflaum, T. Wolford, Michael E. Barry, Gardner, Carton & Douglas, Chicago, Ill., for counterdefendants.

James E. Beckley, Leo G. Aubel, Christopher J. Barber, Marsha A. Tolchin, James E. Beckley & Associates, Chicago, Ill., William G. Schopf, Jr., Paula Litt, Kenneth E. Kraus, Schopf & Weiss, Skadden, Arps, Slate, Meagher & Flom, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case presents the question whether a corporation may be liable under § 1962(a) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, when it has benefited from a pattern of racketeering activity. Defendants Norlin Corporation ("Norlin"), Chas. P. Young Company ("CPY"), and Chas. P. Young Chicago, Inc. ("CPYC") argue that the corporation must be a perpetrator, while plaintiff Pandick, Inc. ("Pandick") contends that being a direct or indirect beneficiary is enough. For the reasons stated below, this court agrees with Pandick, and denies defendants' motion to dismiss Count I of the Second Supplemental Complaint.

## FACTS

The following facts are alleged in Pandick's Second Supplemental Complaint. These facts are relevant to Count I, and for the purposes of this motion they are presumed to be true.

In March, 1983, defendants Patrick J. Rooney and Rooney, Pace Group, Inc. ("RPG") commenced a takeover battle against Norlin. Norlin is the parent corporation of CPY and its subsidiary, CPYC. After a struggle to purchase shares of stock and to secure an injunction prohibiting Norlin from turning to a "white knight", Rooney and RPG prevailed. Once Rooney and RPG took over Norlin, they began attacking Pandick, CPYC's competitor in the market for financial printing services. They filed a frivolous lawsuit against Pandick and aggressively sought to hire Pandick's employees.

Prior to the Norlin takeover, Rooney and RPG received income from a pattern of racketeering activity that included violations of state and federal securities laws, violations of Securities and Exchange Commission ("SEC") regulations, and knowingly filing a fraudulent income tax return. Pandick was injured when CPY and CPYC, at Rooney's and RPG's direction, used the proceeds to fund the campaign of unfair competition. Norlin, CPY, and CPYC were therefore the enterprises through which Rooney and RPG hurt Pandick.

## DISCUSSION

Norlin, CPY, and CPYC assert that Count I fails to state a claim against them because they are not "principals" within the meaning of 18 U.S.C. § 1962(a). That section provides in relevant part:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Norlin, CPY, and CPYC claim that they are not principals because they could not have committed any of the predicate acts; all but one of the alleged acts were completed before Rooney and RPG attained

control over Norlin. Upon acquiring control, however, Rooney became chairman and chief executive officer of Norlin and CPY, and used the funds to benefit all three companies, including CPYC. The question, therefore, is whether Norlin, CPY, and CPYC can be held accountable for Rooney's and RPG's actions.[1]

The Seventh Circuit's decision in *Liquid Air Corporation v. Rogers*, 834 F.2d 1297 (7th Cir.1987), requires this court to rule that they can. In *Liquid Air*, three of the individual defendants devised a scheme in which one of them, an employee of the plaintiff, would create false documents indicating that the other two had returned gas cylinders they had rented. In return for the employee's participation, the others gave him his own welding business. The business, called Bridges Welding Supply, also was sued.

Bridges Welding sought to avoid liability as a matter of law on the ground that it did not exist as a corporation during the commission of the predicate acts. The Seventh Circuit rejected that contention, ruling that a corporation could be held liable under § 1962(a) even if it merely derived benefit from the RICO violation, as Bridges Welding had. *Id.* at 1306.

The decision in *Liquid Air* was foreshadowed by *Haroco v. American National Bank & Trust Company of Chicago*, 747 F.2d 384 (7th Cir.1984). In that case, the Court of Appeals held that a corporation could be both a liable person and an enterprise under § 1962(a), and wrote:

> Under subsection (a), therefore, the liable person may be a corporation using the proceeds of a pattern of racketeering activity in its operations. This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when it is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeer-

ing. This result is in accord with the primary purpose of RICO, which, after all, is to reach those who ultimately profit from racketeering, not those who are victimized by it.

*Id.* at 401.

This background demonstrates that the more recent case of *D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964 (7th Cir. 1988), is not to the contrary. In *D & S*, the court held that the doctrine of respondeat superior was inapplicable to civil RICO actions. That decision, however, did not overrule, limit, or question *Liquid Air*. The court stated that corporations could be held liable when their employees intended to confer a benefit upon them, especially when the employees were acting with the corporation's knowledge. *Id.* at 967. It cited *United States v. Cincotta*, 689 F.2d 238, 240–42 (1st Cir.1982), a case in which the jury was allowed to infer participation in the scheme of racketeering activity solely from the corporation's receipt of benefits.

Moreover, the facts in *D & S* clearly distinguish that case from this one. In *D & S*, the individual defendant was stealing auto parts from his employer and exposing the latter to liability for issuing false invoices. While the employer used the funds from the phony bills in running its business, it did so unknowingly and thus could not be held liable. *D & S, supra* at 967. In this case, Rooney is the chairman and CEO of Norlin and CPY, and those two companies and CPYC undoubtedly benefit from decreasing Pandick's share of the financial services printing market and hiring its key employees. Norlin, CPY, and CPYC therefore may be held accountable as a matter of direct rather than vicarious liability.[2]

### CONCLUSION

The motion of defendants Norlin, CPY, and CPYC to dismiss Count I of the Second

---

**1.** In the absence of any argument, this court presumes that Norlin, CPY, and CPYC should be treated equally for purposes of this motion.

**2.** In making this ruling, the court notes that the Second Supplemental Complaint does not allege

that Norlin, CPY, or CPYC are liable "persons" within the meaning of RICO. Since Pandick represented that this was merely an oversight, it is given leave to amend its pleading accordingly.

Supplemental Complaint is denied. Pandick is given leave to amend as stated in this opinion.