**UNITED STATES of America, Plaintiff,**

v.

**UNITED SKATES OF AMERICA, INC., Defendant.**

**No. 89 CR 30–2.**

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1989.

Harvey M. Silets, Silets & Martin, Chicago, Ill., for plaintiff.

Pierre Talbert, Asst. U.S. Atty., Chicago, Ill., for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The defendant, United Skates of America, Inc. ("United Skates") has moved pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure for an order setting aside the jury's verdict of guilty as to Count III of the indictment against United Skates and entering a judgment of acquittal as to Count III. For the reasons stated below, we grant United Skates' motion.

Count III of the indictment against United Skates charges United Skates with a violation of 18 U.S.C. § 1962(a) for receiving income, which United Skates used and invested in its operation, that was "derived ... from a pattern of racketeering activity."[1] Count III describes the pattern of racketeering activity as multiple acts of

---

**1.** Count I of the indictment describes the details of the alleged racketeering activity in which United Skates was involved through various of its employees. Count II specifically charges one employee, James A. Dvorak, as a co-defendant,

bribery committed by James A. Dvorak and others on behalf of United Skates, in violation of Illinois Revised Statutes, chapter 38, section 33–1.

The special verdict form signed by the jury recited that the jury had unanimously concluded beyond a reasonable doubt that United Skates had received income from two bribe payments made for the purpose of obtaining a 4:00 a.m. liquor license for a roller-skating rink owned and operated by United Skates in Chicago. The jury did not find that United Skates violated 18 U.S.C. § 1962(a) as a result of any other racketeering acts charged in the indictment.[2]

■ United Skates has raised five challenges to the jury's finding of guilty. Two of the challenges relate to a recurring question in RICO litigation: whether the jury could properly have found a pattern of racketeering activity within the meaning of the statute and United States Supreme Court precedent.[3] Another argument con-

cerns whether the jury could have properly found that money bribes were actually paid to public officials who granted a license otherwise unavailable to United Skates such that the income from the license could be said to have "derived from the racketeering activity." United Skates also has raised a novel issue concerning whether state law or federal law controls the question of corporate liability under RICO for predicate acts committed by its employees solely based on violation of state criminal law.[4] While we acknowledge that these are not frivolous arguments, we need not address them since United Skates' remaining argument adequately supports a finding in its favor on the motion to set aside the verdict. We turn instead to United Skates' remaining argument.

United Skates contends that the government failed to establish an essential element of its proof—that United Skates "received any income derived, directly or indirectly," from the 4:00 a.m. liquor license

and details his alleged role in a RICO conspiracy. The jury acquitted Dvorak of all charges.

2. The indictment had charged that additional acts of bribery were committed on behalf of United Skates to obtain an arcade license, a 2:00 a.m. liquor license, and a favorable ruling in a demolition case brought against the Chicago rink.

3. At oral argument on United Skates' motion, we raised a related concern as to whether the jury might have improperly returned a verdict of guilty inconsistent with an instruction (number 18) which contained a potentially faulty sentence that described what constitutes two acts of racketeering activity. The potential error in the instruction was detected immediately following the charge. Both sides agreed that the best way to correct any confusion from the troublesome sentence would be to provide the jury with a written, corrected version of the instruction. We note that the uncorrected charge nevertheless may have left open the possibility that the verdict was based on a legally insufficient predicate, as United Skates contends. Cf. U.S. v. Kragness, 830 F.2d 842, 861 (8th Cir.1987). We make no determination on this issue.

4. Notwithstanding the issue of state versus federal law of corporate responsibility, having considered the legal authority that has only now been brought to our attention, it appears that Government Instruction No. 16 was incorrect as a matter of federal law on the issue of corporate

responsibility under RICO. That instruction was based on Seventh Circuit Committee Pattern Instruction 5.04 (1980), which adopted the majority position that, unless the criminal statute explicitly provides otherwise, a corporation may be held vicariously liable under the doctrine of respondeat superior. Although we recognize that there may be some debate as to what constitutes the precise standard for corporate liability under RICO, we believe that at the very least, it is apparent that something more than respondeat superior is required before a corporation will be held liable for the acts of its employees. See D & S Auto Parts, Inc. v. Schwartz, 838 F.2d 964, 966–68, cert. denied, —— U.S. ——, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988) (holding that a corporate employer cannot be held vicariously liable under RICO § 1962(a) for the independent acts of its employees; the principles of respondeat superior were inconsistent with the Seventh Circuit's approach to direct liability in both civil and criminal RICO cases); Liquid Air Corp. v. Rogers, 834 F.2d 1297 (7th Cir.1987) (holding that vicarious liability has only limited application to RICO to avoid holding vicariously liable a corporation that was the victim of a RICO violation). See also Haroco v. American National Bank & Trust Co., 747 F.2d 384 (7th Cir.1984); Harrison v. Dean Witter Reynolds, Inc., 695 F.Supp. 959 (N.D.Ill. 1988); Pandick, Inc. v. Rooney, 688 F.Supp. 1288 (N.D.Ill.1988); Parnes v. Heinold Commodities, Inc., 548 F.Supp. 20 (N.D.Ill.1982). Therefore, on this issue as well there is the possibility that the jury's verdict was based on a legally insufficient predicate.

432

which the jury concluded had been obtained by racketeering activities. 18 U.S.C. § 1962(a).

At trial, United Skates provided evidence that it received gross revenues from the sale of liquor during the Chicago rink's late night operations. At the time, the rink operated at night under a 2:00 a.m. basic liquor license, which the jury did not find had been obtained as a result of racketeering activity, and the 4:00 a.m. license. The evidence, however, does not indicate at what time of night particular revenues may have been generated. Thus, as United Skates points out, there was no direct evidence that any portion of the revenues was attributable to liquor sales obtained during the period of "illegitimate" operation between 2:00 a.m. and 4:00 a.m.

The government does not contest this characterization of the evidence. Rather, the government agrees that, based on the evidence that gross revenues were generated and evidence that the bar was open between 2:00 a.m. and 4:00 a.m., it would be rational circumstantially to infer that a sale occurred between 2:00 a.m. and 4:00 a.m. We must therefore determine whether such circumstantial evidence is sufficient to satisfy the government's burden of showing beyond a reasonable doubt that United Skates actually received income from its racketeering activity.

In support of its argument, the government cites several cases for the propositions that 18 U.S.C. § 1962(a) does not require the government to prove a specific sum as proceeds of racketeering activity or to trace the specific uses to which such proceeds were ultimately put. These propositions, however, are irrelevant to our threshold concern as to whether there is sufficient circumstantial evidence to establish that any proceeds were derived *at all.* On this point neither the government nor United Skates has provided any legal support. Nor have we found any factually analogous cases construing § 1962(a). We must therefore rely on general principles of criminal evidence.

■ While circumstantial evidence and the inferences drawn therefrom may certainly be sufficient to support a finding on a particular element of an offense, *Jackson v. Virginia,* 443 U.S. 307, 324–25, 99 S.Ct. 2781, 2791–92, 61 L.Ed.2d 560 (1979), mere suspicion or speculation cannot be the basis for the creation of logical inferences. United Skates argues that the government has failed to provide the necessary hard facts from which the jury could properly make a circumstantial inference that United Skates derived income from the sale of liquor after 2:00 a.m. We agree.

We do not believe that the fact the bar was open from 2:00 a.m. to 4:00 a.m. supports any valid inference that liquor was served and sold during that time. And without some indication that operating under the 4:00 a.m. license led to an increase in revenue above that obtained from the otherwise legitimate late night operations, we can only conclude that the jury's finding was based purely on speculation. Accordingly, the government failed to establish that United Skates derived income from racketeering activity in accordance with the mandates of 18 U.S.C. § 1962(a) and acquittal is warranted. United Skates' motion is allowed, and the jury's verdict of guilty as to Count III is set aside. United Skates is acquitted as to Count III. It is so ordered.