**R.E. DAVIS CHEMICAL CORPORATION,**
**Plaintiff,**

**v.**

**NALCO CHEMICAL COMPANY, Clarence R. Davis, John C. Kisalus, Robert W. Reynolds, and Wesley E. Cravey, Defendants.**

**No. 89 C 1182.**

United States District Court,
N.D. Illinois, E.D.

Nov. 13, 1990.

**1504**

Sherwin J. Malkin, Sherwin J Malkin, Ltd, Chicago, Ill., for plaintiff.

Kenneth J. Jurek, Mary Jean Dolan, Rosanne J. Faraci, Mayer, Brown & Platt, Patrick Joseph Falahee, Jr., Connelly, Mustes & Schroeder, Chicago, Ill., Christian L. Campbell, Nalco Chemical Corp., Naperville, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

■ R.E. Davis Chemical Corporation, the plaintiff in this action ("Davis Chemical" or "plaintiff"), alleges that the defendants, Nalco Chemical Company ("Nalco"), Clarence R. Davis ("Clarence Davis"), John C. Kisalus ("Kisalus"), Robert W. Reynolds ("Reynolds"), and Wesley E. Cravey ("Cravey"), misappropriated Davis Chemical's formula for a chemical compound used in the gasoline refining and re-refining industry and that Nalco currently sells a compound based upon the same chemical principle as that formula. Davis Chemical's complaint is framed in two counts: Count One asserts three separate claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"); and Count Two asserts a state law claim of unfair competition. Pending before the Court is defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court grants defendants' motion.[1]

---

1. On June 29, 1989, the Court, on defendants' motion, ordered that discovery be stayed pending resolution of the defendants' motion to dismiss the complaint. Subsequently, plaintiff asked the Court to reconsider its ruling and to lift the stay of discovery. The Court agreed to allow the parties to brief the issue and took the matter under advisement, indicating orally that the stay would remain in effect pending further ruling. Because the parties' memoranda on the discovery question were addressed solely to the adequacy of plaintiff's complaint, and because the Court had already reviewed the complaint prior to granting the motion to stay discovery, the Court postponed further consideration of the discovery issue until it could review the motion to dismiss in greater detail. Because the Court has now concluded that the complaint

## II. FACTS

The Court has assumed for purposes of the pending motion to dismiss that the facts alleged in Davis Chemical's complaint are true. *W.E. O'Neil Const. Co. v. National Union Fire Ins. Co. of Pittsburgh,* 721 F.Supp. 984, 986 (N.D.Ill.1989) (Rovner, J.), *citing Conley v. Gibson,* 355 U.S. 41, 78 C.St. 99, 2 L.Ed.2d 80 (1957).[2]

In 1961 Robert E. Davis ("Davis"), the president of Davis Chemical, invented REX–121A, a chemical additive compound used in the gasoline refining and re-refining industry to process alkylate.[3] That same year, Davis assigned his rights and interest in REX–121A to Davis Chemical, of which he and his spouse are the sole shareholders. REX–121A is based upon a unique formulation known only to Davis, and Davis Chemical has consistently maintained the confidentiality of the formula for the additive as a trade secret.[4]

Davis Chemical has marketed and sold REX–121A to refiners and re-refiners throughout the country since 1963. Sales of REX–121A are made pursuant to written secrecy agreements pursuant to which the purchaser agrees not to analyze the additive or to disclose anything which the purchaser might learn about the additive in the course of using it. In 1985, Mobil Oil Corporation purchased REX–121A pursuant to such a secrecy agreement.

Nalco is a competitor of Davis Chemical.[5] In late 1984, Reynolds, the marketing manager of Nalco, decided that Nalco should develop and market its own alkylation additive. In February, 1985, Nalco hired Kisalus as a chemist for its "RPC Group", which developed new products. Defendant Cravey was Kisalus' supervisor. On or about February 11, 1985, Cravey directed Kisalus to develop an alkylation additive.

Defendant Clarence Davis was a Nalco salesman whose principal responsibility was to manage Nalco's sales account with Mobil Oil Corporation at Mobil's refinery in Beaumont, Texas. On or about April 11, 1985, Clarence Davis, with the knowledge and consent of Reynolds, removed a sample of REX–121A from a pump which belonged to Davis Chemical and which was located at Mobil's Beaumont refinery. This was done without the knowledge or consent of either Mobil or Davis Chemical. Clarence Davis "sent or delivered" the sample to Nalco's laboratory in Sugar Land, Texas for an analysis of its contents. The sample "was thereupon delivered" to Kisalus, who, with Cravey's knowledge and consent, had it evaluated by the analytical department of Nalco's RPC Group. Mark A. Ward, a Nalco chemist, performed the analysis, and the results were "thereupon delivered" to Kisalus, Reynolds, and Cravey. At this time, Kisalus and Nalco had not yet developed their own alkylation additive.

On or about July 16, 1985, Nalco "unlawfully received from a person or persons unknown" to Davis Chemical a copy of

must be dismissed, plaintiff's motion to lift the stay of discovery is moot at present. However, the Court has granted plaintiff the opportunity *to file an amended complaint.* In the event plaintiff elects to avail itself of this opportunity, discovery will remain stayed until such time as the defendants file an answer on the merits of the amended complaint. The Court deems such a stay appropriate in light of the numerous defects present in plaintiff's RICO claims, which are the only tie to federal jurisdiction over this case. Moreover, plaintiff is not significantly disadvantaged by the stay, given that it appears from the parties' memoranda that plaintiff has already taken substantial discovery in parallel litigation in state court between the same parties regarding the same facts underlying this case.

2. The Court has found it useful at certain points in the factual summary to quote directly from the complaint, particularly where the language of the complaint is silent or ambiguous as to how a particular action was accomplished or who took a particular action. Quotation marks identify these passages.

3. Alkylate is a chemical derivative used in processing various motor fuels. *See Turlington v. Phillips Petroleum Co.,* 795 F.2d 434, 437 (5th Cir.1986); *Exxon Corp. v. United States,* 462 F.Supp. 378, 378 (Cust.Ct.1978), *aff'd,* 607 F.2d 985 (Cust. & Pat.App.1979).

4. The complaint is silent as to whether Davis or Davis Chemical ever obtained a patent on REX–121A or attempted to do so.

5. The complaint does not expressly allege the nature of the business in which either Davis Chemical or Nalco are engaged. However, it may be inferred from the complaint that both companies manufacture chemical products.

Davis Chemical's confidential manual describing REX–121A and the procedures for use of the additive. Davis Chemical furnishes this manual only to its customers and only pursuant to a written secrecy agreement. Nalco routed the manual to Kisalus.

After receiving the manual and the results of the analysis performed on the sample of REX–121A, and using the information he obtained from these sources, Kisalus developed an alkylation additive which contained ingredients either identical or comparable to those contained in REX–121A and which was based upon the same chemical principle as REX–121A.

Once the new additive was tested, Kisalus, at the request of Cravey, mailed data about the additive to Nalco's patent attorneys in Naperville, Illinois, who in turn prepared a patent application. In the course of preparing the application, Nalco's attorneys consulted with Kisalus by telephone and sent to him drafts as well as the final version of the application through the United States mail. On or about February 11, 1987, Kisalus signed the application and, on the same date, assigned to Nalco his entire proprietary interest in the new additive. On or about February 24, 1987, the patent application "was mailed" to the United States Patent and Trademark Office through the United States mail. Nalco's patent attorneys subsequently prepared a second patent application for the additive. After Kisalus signed this application, the attorneys "caused same to be mailed" to the Patent and Trademark Office via the United States mail.

On each of the patent applications, Kisalus indicated that he was the first and only inventor of the alkylation additive and that the information provided on the application with respect to the additive was accurate.

The applications disclosed nothing about REX–121A or the similarities between it and Nalco's additive.

Nalco has sold its additive in competition with Davis Chemical since 1986. In connection with sales of the additive, Nalco has mailed invoices and other correspondence to its customers through the United States mail and has caused the additive itself to be transported in interstate commerce.

In February and March of 1988, Nalco induced two of Davis Chemical's customers, Marathon Oil Company and Mobil Oil Corporation, to begin purchasing Nalco's alkylation additive instead of Davis Chemical's REX–121A. As a result, Davis Chemical lost anticipated sales of $46,362 to Marathon from February 1, 1988 through November 22, 1988, and $262,000 from March 9, 1988 through January 31, 1989.

On various occasions within the past ten years, Nalco has also obtained samples of products manufactured by other competitors for the purpose of analyzing the composition of those products and using the information in the development of its own products. In each instance, Nalco obtained the sample without the knowledge or consent of its competitor.[6]

### III. SUMMARY OF THE RICO ALLEGATIONS

■ Defendants have moved to dismiss the complaint, contending that the RICO allegations in Count One, which supply the basis for federal jurisdiction over this case, are defective on a variety of grounds. Although phrased as a single count, Count One actually asserts multiple claims under three separate provisions of RICO—subsections (a), (c), and (d) of § 1962. Each of these provisions prohibits a different type of conduct which is associated with or furthers racketeering activity.[7] Subsection (a)

---

**6.** Neither the products nor the competitors have been identified in the complaint.

**7.** In view of the substantive differences among the provisions of the four subsections of § 1962 and the racketeering-related conduct which they target, it is improper for the plaintiff simply to allege a set of facts and then conclusorily state that these facts establish liability for nearly every aspect of RICO under the sun, as Davis Chemical has done in this case. *See Beck v.*

*Cantor, Fitzgerald & Co.,* 621 F.Supp. 1547, 1563 (N.D.Ill.1985) (Rovner, J.). *See also Jennings v. Emry,* 910 F.2d 1434, 1435, 1436 (7th Cir.1990). In the event Davis Chemical attempts to replead its RICO claims, it is admonished to set forth each claim and the particular facts supporting it in a separate count of the amended complaint. *See Stich v. Lucas,* 1990 WL 92762, Exhibit 1 (N.D.Ill. June 14, 1990) (Shadur, J.) (form order employed by other district courts to flesh out the basis for RICO claims).

makes it unlawful for any person who has received income from a pattern of racketeering activity to invest the proceeds of such income in the establishment, operation, or acquisition of an interest in an enterprise which is engaged in or affects interstate commerce. Subsection (b), which is not at issue in this case, makes it unlawful for any person to acquire or maintain an interest in an interstate enterprise through a pattern of racketeering activity. Subsection (c) makes it unlawful for any person employed by or associated with an interstate enterprise to conduct or participate in the affairs of the enterprise through a pattern of racketeering activity. Finally, subsection (d) makes it unlawful for any person to conspire to violate the provisions of subsections (a), (b), or (c).

 Although each of the four subsections of § 1962 addresses a distinct type of racketeering-related conduct, they have in common three fundamental elements: a "person", an "enterprise", and a "pattern of racketeering activity". Each of these elements must be pleaded separately. *See Chicago HMO v. Trans Pacific Life Insurance Co.*, 622 F.Supp. 489, 495 (N.D.Ill. 1985) (Rovner, J.). The RICO statute defines the term "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." The term "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Although the terms "person" and "enterprise" as defined both embrace individuals and entities, they are distinct in terms of the roles they play in a RICO cause of action. *Id.* at 495. Within the RICO framework, "persons" are the individuals or entities which commit the statutorily proscribed acts, and only they are subject to liability under RICO. *Id.* at 494. The "enterprise," although it too may be an individual or an entity, is the vehicle through which the "person" or "persons" accomplish the prohibited activity. For example, it is the "enterprise" which is the repository of the funds reaped from racketeering activity in violation of § 1962(a), or which is operated through a pattern of racketeering activity in violation of § 1962(c). A RICO complaint must therefore distinguish between the "persons" who allegedly violated the statute and the "enterprise" through which these "persons" acted. *Id.* at 495.[8] Finally, the complaint must allege a "pattern of racketeering activity," which is defined in § 1961(5) as a course of conduct including "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years ... after the commission of a prior act of racketeering." Section 1961(1) lists the types of conduct which constitute racketeering activity. For purposes of plaintiff's complaint, it is sufficient to note that the offenses of mail fraud, wire fraud, and the transportation of stolen property in interstate commerce qualify as predicate acts of racketeering. *See* § 1961(1)(B).

Paragraphs 15 through 19 of plaintiff's complaint set forth the allegations designed to plead the three elements discussed above. Certain of these allegations do not require extended discussion here. For example, in ¶¶ 17 and 19, plaintiff alleges that Nalco is an "enterprise" and that Kisalus, Reynolds, Cravey and Clarence Davis are "persons".

It is the "pattern of racketeering activity" element of the RICO claim which supplies the foundation for defendants' motion to dismiss. Paragraph 15 of the complaint purports to allege predicate acts of mail fraud, wire fraud, and the transportation of stolen property in interstate commerce. Insofar as defendants have asserted that the allegations contained in ¶¶ 15 and 16 do not suffice to establish the "pattern of

---

**8.** This is not to say that the same entity cannot sometimes be both the "person" and the "enterprise". *See Haroco v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384, 401–02 (7th Cir.1984), *aff'd on other grounds*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), in which the court of appeals held that a corporate "enterprise" could not be held liable as a "person" under § 1962(c), but could be under § 1962(a) so long as the corporation was a perpetrator as opposed to the victim or passive instrument of racketeering activity.

racketeering activity" required to state a violation of 18 U.S.C. § 1962(a), and (c), ¶ 15 merits a more lengthy discussion.

In ¶ 15(A), plaintiff alleges that the mail and wire communications which took place in connection with the preparation and filing of the two patent applications furthered a scheme to defraud both the United States Patent and Trademark Office [9] and plaintiff, in that the applications falsely represented that Kisalus was the original, first and sole inventor of the alkylation additive, fraudulently concealed the fact that Kisalus had based his work upon the analysis of REX–121A and the confidential manual, and claimed an exclusive right to a formula which was actually plaintiff's trade secret. Based upon these purported misrepresentations, plaintiff asserts that the mail and wire communications were made in violation of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).

Paragraph 15(B) alleges that these same communications were made in furtherance of a conspiracy among the defendants to misappropriate plaintiff's trade secret. Pursuant to this alternate characterization, plaintiff alleges that defendants are liable for the transportation of stolen property in interstate commerce under 18 U.S.C. § 2314.[10]

In ¶ 15(C), plaintiff alleges that the transportation of Nalco's alkylation additive for sale to its customers also amounts to the transportation of stolen property in interstate commerce, giving rise to liability under 18 U.S.C. §§ 2314 and 2315.[11]

Finally, ¶¶ 18 and 19 identify the three separate RICO claims which Davis Chemical asserts against defendants. In ¶ 18, plaintiff alleges that defendants derived income from a pattern of racketeering activity which was used in the operation of Nalco, in violation of 18 U.S.C. § 1962(a). In ¶ 19, plaintiff alleges that the individual defendants conducted and participated in the affairs of Nalco through a pattern of racketeering, thereby violating the provisions of both subsections (c) and (d) of § 1962.

With the RICO allegations having been summarized, the Court can proceed to address the motion to dismiss. Defendants have challenged the adequacy of each of the three RICO claims asserted by plaintiff on a variety of grounds. The Court has considered each RICO claim in turn, beginning with plaintiff's claim against the individual defendants under § 1962(c).

## IV. ANALYSIS

### A. *Section 1962(c)*

■ Section 1962(c) of RICO renders liable a person who, as the employee or associate of an enterprise, conducts or participates in the affairs of the enterprise "through a pattern of racketeering activity." Plaintiff alleges that defendants participated in the affairs of Nalco through a pattern of racketeering activity which included multiple acts of mail and wire fraud as well as the transportation of stolen property in interstate commerce. *See* Com-

---

**9.** Although this government agency is identified in the complaint as a victim of the defendants' alleged scheme, Davis Chemical has not cited or otherwise relied upon this allegation in defending the adequacy of its RICO claims against defendants' motion to dismiss. Accordingly, the Court has likewise not considered this allegation in scrutinizing the RICO claims.

**10.** In relevant part, § 2314 provides:

Whoever transports, transmits, or transfers in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more,, knowing the same to have been stolen, converted or taken by fraud;

. . . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C.A. § 2314 (West Supp.1990).

**11.** In relevant part, § 2315 provides:

Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any goods, wares, or merchandise, securities, or money of the value of $5,000 or more, ... which have crossed a State or United States boundary after being stolen, unlawfully converted, or taken;

. . . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.
18 U.S.C.A. § 2315 (West 1970 & Supp.1990).

plaint ¶ 15. However, defendants contend that the complaint does not meet the requirements of § 1962(c) in two principal respects:

 (1) the allegations as to the predicate RICO offenses are insufficient because

 (a) they do not establish that each defendant committed at least two predicate acts of racketeering, and

 (b) they do not allege fraud with particularity; and

 (2) the complaint fails to allege a pattern of racketeering activity.

The Court has addressed each of these arguments below.[12]

 1. Sufficiency of the Predicate Act Allegations

As set forth above, among the elements which plaintiff must allege in order to successfully state a claim under RICO is that defendants engaged in a pattern of racketeering activity. This in turn requires plaintiff to allege that defendants committed two or more predicate acts of racketeering. 18 U.S.C. § 1961(1). Defendants' first challenge is to the sufficiency of the predicate act allegations. They argue (a) that the complaint fails to allege that each defendant committed two or more predicate acts of racketeering and (b) that the complaint fails to allege fraud with particularity. The Court has addressed these arguments in turn below.

a. *Failure to allege that each defendant committed two or more predicate acts of racketeering*

 ■ Section 1962(c) imposes liability upon any person who participates in the affairs of an enterprise through a pattern of racketeering activity. Because a "pattern of racketeering activity" requires at least two acts of racketeering activity, 18 U.S.C. § 1961(5), it follows that an individual must have committed at least two predicate acts in order to be held liable under § 1962(c). *See Celpaco, Inc. v. MD Papierfabriken,* 686 F.Supp. 983, 992 (D.Conn.1988); *Rich–Taubman Associates v. Stamford Restaurant Operating Co.,* 587 F.Supp. 875, 878–79 (S.D.N.Y.1984). *See also Beck v. Cantor, Fitzgerald & Co., supra,* 621 F.Supp. at 1551 (plaintiff had not pleaded RICO claim with particularity where, *inter alia,* he had not alleged that each defendant had violated the wire or mail fraud statutes at least twice); *Wilson v. Askew,* 709 F.Supp. 146, 152 (W.D.Ark. 1989).

As defendants read the complaint, plaintiff has alleged only that they conspired to commit mail fraud, wire fraud, and the interstate transportation of stolen property. Although each of these three substantive offenses qualifies under § 1961(1)(B)[13] as a predicate act of racketeering, defendants contend that the *conspiracy* to commit such offenses does not qualify as such an act. Accordingly, in defendants' view, plaintiff has failed to allege that each of them committed the requisite two predicate acts of racketeering activity.

Plaintiff takes issue with the premise for this argument, and contends that the complaint alleges not simply that defendants engaged in a conspiracy, but also that they committed the substantive offenses of mail fraud, wire fraud, and the interstate trans-

---

**12.** Defendants have attacked plaintiff's § 1962(c) claim on a variety of grounds, as they have plaintiff's claims under the other subsections of § 1962. The Court has elected to address all of the grounds for dismissal advanced by defendants, although it need not have done so once it concluded that any particular ground required dismissal. The Court deemed an exhaustive review of the complaint and defendants' objections to it appropriate in view of Nalco's right, at this stage of the proceedings, to file an amended complaint. *See Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1111 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *Northlake Community Hospital v. United States,* 654 F.2d 1234, 1240 (7th Cir.1981) (for purposes of Fed.R.Civ.P.

15(a), which allows plaintiff to amend its complaint once as a matter of course at any time before a responsive pleading is filed, a motion to dismiss is not considered a responsive pleading).

**13.** Section 1961 provides, in relevant part:
 As used in this chapter—
 (1) "racketeering activity" means ... (B) any act which is indictable under any of the following provisions of title 18, United States Code: ... section 1341 (relating to mail fraud); section 1343 (relating to wire fraud); ... [and] sections 2314 and 2315 (relating to interstate transportation of stolen property).…
 18 U.S.C. § 1961(1)(B).

portation of stolen property. Plaintiff does concede that the complaint does not establish that each defendant personally committed two or more acts of racketeering. However, it maintains that the complaint nonetheless meets the two-act requirement by virtue of conspiracy and aider and abettor principles, which permit the predicate acts committed by one defendant to be attributed to another.

### 1. Conspiracy as a Predicate Offense Under § 1962(c)

■ Defendants are correct in contending that a conspiracy to commit the offenses of mail fraud, wire fraud, or the interstate transportation of stolen property does not qualify as a predicate act of racketeering. Although the substantive offenses of mail and wire fraud and transportation of stolen property in interstate commerce are listed in § 1961(1)(B) as acts which constitute racketeering activity, the wording of that section is not so broad as to encompass any conduct which involves one of these offenses but does not constitute the offense itself, such as the conspiracy to commit mail fraud. The provisions of this sub-section thus stand in contrast to § 1961(1)(A), which incorporates *"any act or threat involving"* murder, kidnaping, gambling, and other specified offenses, and § 1961(1)(D), which embraces *"any offense involving"* specified types of fraud and narcotics trafficking. This Court therefore concurs with the other courts which have concluded that a conspiracy to commit one of the offenses enumerated in § 1961(1)(B) does not qualify as a predicate act of racketeering activity. *See United States v. Weisman,* 624 F.2d 1118, 1124 (2d Cir.), *cert. denied,* 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980) [14]; *Zola v. Gordon,* 685 F.Supp. 354, 376 n. 29 (S.D.N.Y.1988); *Allington v. Carpenter,* 619 F.Supp. 474, 477 n. 2 (C.D.Cal.1985). Accordingly, to the extent that plaintiff has alleged only that defendants engaged in a conspiracy to commit mail fraud, wire fraud, and transportation of stolen property in interstate commerce, it has not adequately alleged that they engaged in any predicate acts of racketeering activity. This brings the Court to the question of what plaintiff has actually alleged in its complaint.

### 2. Whether the complaint alleges more than just a conspiracy to commit mail fraud, wire fraud, and the interstate transportation of stolen property

As noted above, plaintiff contends that it has in fact alleged that defendants engaged in the substantive offenses of mail fraud, wire fraud, and the interstate transportation of stolen property, in addition to a conspiracy to commit these offenses. Unfortunately, the complaint itself is somewhat ambiguous on this point. In relevant part, ¶ 15 of the complaint alleges:

> By virtue of the foregoing, Defendants and each of them *have been engaged in a scheme to defraud and in the transportation of stolen property in interstate commerce,* in that:
>
> A. Defendants, individually *and in conspiracy with each other,* by use of the United States mails and interstate telephone communications on several occasions during the years 1986 and 1987 and in violation of 18 U.S.C. §§ 1341 and 1343, caused patent applications to be prepared and filed with the United States Patent and Trademark Office, which patent applications fraudulently represented that Defendant Kisalus was the "original, first and sole inventor" of the aforesaid alkylation additive and which fraudulently omitted material and significant facts with respect to the aforementioned analysis of the stolen sample of REX–121A and the knowledge and information which was obtained from said analysis as

---

**14.** Plaintiff's citation of *Weisman* for the proposition that a conspiracy to violate *any* of the substantive offenses listed in Section 1961(1) qualifies as a predicate act of racketeering is puzzling. The court in *Weisman* did find that a conspiracy to commit the offenses listed in Sections 1961(1)(D) would so qualify. 624 F.2d at 1124. However, the court explicitly noted that

"subsections (B) and (C), which list most of the other predicate acts chargeable under RICO, conspicuously lack the broad 'any offense involving' language of subsection (D) and, in fact, require that the act be indictable under specifically enumerated sections of the criminal code." *Id.*

well as from Plaintiff's aforesaid confidential manual. . . .

B. By virtue of the theft and fraudulent taking of Plaintiff's trade secret, as aforesaid, and the use of the United States mails and interstate telephone for the purpose of sending papers describing said trade secret, to-wit: mail and telephone communications between Defendant Kisalus and Nalco's aforementioned patent attorneys with regard to the preparation of the aforesaid patent applications and the mailing of the two said patent applications to the United States Patent and Trademark Office, Nalco, individually, *and all of the Defendants collectively and in conspiracy with each other, have knowingly engaged in the transportation of stolen property* having the value of $5,000 or more, to-wit: Plaintiff's trade secret, in interstate commerce, in violation of 18 U.S.C. § 2314.

C. By virtue of the theft and fraudulent taking of Plaintiff's trade secret, as aforesaid, and the incorporation thereof in the alkylation additive which Nalco transports in interstate commerce for sale to its customers (including customers of Plaintiff), Nalco, individually, and all of the Defendants collectively *and in conspiracy with each other, have knowingly engaged in the transportation of stolen property* having the value of $5,000 or more, to-wit: Plaintiff's trade secret, in interstate commerce, in violation of 18 U.S.C. §§ 2314 and 2315.

(Emphasis supplied.) Were it not for the addition of the words "and in conspiracy with each other" to each of the three subparagraphs above, there would be no question that plaintiff is attempting to allege that defendants engaged in the substantive offenses of mail fraud, wire fraud, and the interstate transportation of stolen property. The casual insertion of those words muddies the waters, making it difficult if not impossible for defendants, as well as the Court, to determine whether plaintiff is attempting to allege a scheme to defraud, a conspiracy, or both.

■ Having had the benefit of plaintiff's briefing on the motion to dismiss, the Court is willing to assume, for the remainder of this discussion regarding RICO's two-act requirement, that the complaint attempts to allege both the substantive offenses of mail fraud, wire fraud, and the interstate transportation of stolen property as well as the conspiracy to commit those offenses. That assumption is not enough to enable the complaint to survive defendants' motion to dismiss, as will become clear below. In any event, the Court admonishes plaintiff's counsel that should Davis Chemical elect to file an amended complaint, further employ of cursory allegations such as "in conspiracy with one another" will not be tolerated. Conspiracy and mail fraud, for example, are distinct offenses. Although both offenses may implicate the same defendants and arise from the same set of facts, each targets a separate aspect of the criminal scenario: The conspiracy statute punishes the agreement to commit the wrong, while the mail fraud statute punishes the use of the mails in furtherance of the wrong. *See Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954). Such distinctions should be reflected in the complaint, and if it is plaintiff's intention to plead both mail fraud and a conspiracy to commit mail fraud, then each offense should be plainly and separately set forth. A plaintiff's attorney may find it tempting to cover the bases and cut corners at the same time, by sprinkling the complaint with as many legal words of art as it will bear. In the end, however, no good is served by cursory allegations which blur the lines between distinct legal claims. Neither defendants nor the Court should be made to parse the complaint in search of all possible legal permutations inherent in an ambiguous phrase, nor should valuable attorney and Court time be wasted litigating motions to dismiss which straightforward pleading would obviate.

Having determined that the complaint purports to assert more than a conspiracy, it remains for the Court to consider whether the complaint properly alleges the requisite elements of the substantive offenses of mail fraud, wire fraud, and the interstate transportation of stolen property and whether the allegations establish that each

**1512**

defendant committed at least two of these predicate offenses.

3. Whether the elements of the predicate acts of mail fraud, wire fraud, and the interstate transportation of stolen property have been properly pleaded

■ To the extent that plaintiff has attempted to allege substantive acts of mail and wire fraud as the foundation for its § 1962(c) RICO claim, the Court observes that although plaintiff has made liberal use of the term "fraudulently," plaintiff has failed to expressly allege that any of the defendants acted with an intent to defraud. Some courts treat such an omission as fatal to allegations of mail and wire fraud. *See, e.g., Robinson v. City Colleges of Chicago,* 656 F.Supp. 555, 558 (N.D.Ill.1987) (Bua, J.). *See also Sendar Co. v. Megaware, Inc.,* 705 F.Supp. 159, 163 (S.D.N.Y.1989); *Allington v. Carpenter, supra,* 619 F.Supp. at 477. Other courts take a more lenient view, and decline to treat the absence of express allegations reflecting the defendants' intent as fatal. *See, e.g., United States v. Berg,* 710 F.Supp. 434, 436–37 (E.D.N.Y.1988).

In this case, however liberally the Court were to construe the complaint, the allegations would not pass muster. The manner in which plaintiff has intertwined conclusory allegations of fraud and conspiracy makes it even more difficult to determine what offense plaintiff is actually alleging, and makes it impossible for defendants to frame an adequate response to the complaint. Accordingly, to the extent the § 1962(c) claim rests upon the mail and wire fraud allegations, it is deficient.

Additional problems may lurk among the §§ 2314 and 2315 stolen property allegations, although these have not been addressed by the parties. The Court mentions them here for plaintiff's consideration should it attempt to frame an amended complaint. First, plaintiff contends that each occasion on which defendants caused documents containing its trade secret to cross state lines constituted a violation of § 2314. (Plaintiff's Mem. at 5.)[15] Yet, it

is impossible to discern from the complaint when, if ever, such documents did cross state lines. According to plaintiff's own allegations, all of the individual defendants worked in Texas (*see* Complaint at 2), and the REX–121A sample as well as confidential documents concerning the product were obtained and studied within the boundaries of Texas (*see id.* ¶¶ 6–8). Plaintiff further contends that because Nalco's alkylation additive incorporates the misappropriated formula for REX–121A, each time Nalco's product is shipped across state lines a separate violation of §§ 2314 and 2315 occurs. Yet, although interstate transportation of Davis Chemical's formula itself may qualify as an offense under the statute, *see United States v. Greenwald,* 479 F.2d 320 (6th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 154, 38 L.Ed.2d 104 (1973), the contention that interstate shipment of a product which was produced by Nalco *based upon* that formula also constitutes an offense may stretch the concept of stolen property for purposes of §§ 2314 and 2315 too far. *Cf. Dowling v. United States,* 473 U.S. 207, 213–18, 105 S.Ct. 3127, 3131–34, 87 L.Ed.2d 152 (1985) (interstate shipment of "bootleg" records did not constitute violation of § 2314; although production of such records infringed the copyright holder's rights and might therefore be likened to misappropriation, defendant had not assumed physical control over the copyright or deprived the owner of its use). *But see id.* at 215 n. 7, 105 S.Ct. at 3132 n. 7 (declining to consider whether result might be different if source material had been obtained through illicit means). Plaintiff should keep these issues in mind in the event it elects to file an amended complaint.

4. Whether the complaint attributes to each defendant two or more predicate racketeering acts

Having addressed the initial issues as to the pleading of the predicate offenses, the Court must now consider whether the allegations of the complaint adequately estab-

---

**15.** Plaintiff's memorandum in opposition to the motion to dismiss has been cited as "Plaintiff's Mem.". Defendants' memorandum in support of the motion to dismiss is cited as "Defendants' Mem."

lish that each defendant committed at least two predicate acts of racketeering.

 One matter requires clarification at the outset of this discussion. Assuming for the moment that the complaint adequately sets forth a scheme to defraud in connection with the mail and wire fraud allegations, each mailing or telephone call in furtherance of that scheme constitutes a separate violation of the mail and wire fraud statutes, and thus a separate predicate act for purposes of the racketeering statute. *See United States v. Ledesma,* 632 F.2d 670, 679 (7th Cir.) ("[I]t is well settled that 'each mailing in furtherance of a scheme to defraud is a separate offense under 18 U.S.C. § 1341 even if there is but one scheme involved.'") (citation omitted), *cert. denied,* 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980); and *United States v. Clausen,* 792 F.2d 102, 104 n. 4 (8th Cir.) ("Each separate interstate telephone call in furtherance of a scheme to defraud ... constitutes a separate offense under 18 U.S.C. § 1343.") (citation omitted), *cert. denied,* 479 U.S. 858, 107 S.Ct. 202, 93 L.Ed.2d 133 (1986). *See also Appley v. West,* 832 F.2d ·1021, 1027 (7th Cir.1987) (two separate mailings in furtherance of single scheme to defraud sufficient to meet the two-act requirement of RICO).[16] Furthermore, an individual who participated in the scheme to defraud need not have personally mailed the letter or placed the telephone which supplies the basis for liability under the mail and wire fraud statutes in order to be held accountable, if use of the mails or wires in connection with the scheme was known or reasonably foreseeable to him or her. *United States v. Kuzniar,* 881 F.2d 466, 472 (7th Cir.1989).

 With respect to the interstate transportation of stolen property, it is similarly true that each separate interstate transportation of a stolen good constitutes a separate violation of § 2314, "even if the various acts of transportation are part of a single scheme." *United States v. Johnpoll,* 739 F.2d 702, 714 (2d Cir.), *cert. de-*

*nied,* 469 U.S. 1075, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984), *citing, inter alia, United States v. Flick,* 516 F.2d 489, 495–96 (7th Cir.), *cert. denied,* 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1975). Moreover, as with mail and wire fraud, a person need not actually have transported the property across state lines in order to be held liable under § 2314, so long as he or she caused or induced another to do so. *Cf. Pereira v. United States, supra,* 347 U.S. at 9, 74 S.Ct. at 363 (where defendant had delivered fraudulently obtained check to bank for collection, and it was common knowledge that bank would, in turn, send check across state lines to out-of-state drawee bank, defendant had "caused" check to be transported in interstate commerce for purposes of § 2314).

 In this context, defendants' emphasis upon the fact that many of their individual actions were not by themselves subject to indictment (*see* Defendants' Mem. at 3) is somewhat misplaced. So long as the complaint properly alleges defendants' participation in a scheme to defraud, for example, each of them can be held to account for the mailings and telephone calls made in furtherance of that scheme, regardless of whether they mailed the letters or participated in the telephone conversations. *Kuzniar,* 881 F.2d at 472. In this case, the complaint refers to multiple mailings and telephone calls made in connection with the alleged scheme to defraud Davis Chemical:

1. Nalco mailed a copy of the confidential manual regarding REX–121A which it had "unlawfully" obtained on or about July 16, 1985 from the Nalco facility in Beaumont, Texas to Reynolds in Sugar Land, Texas;

2. After preparing Nalco's additive, Kisalus mailed information and data regarding the additive from Texas to Nalco's patent attorneys in Naperville, Illinois for purposes of preparing a patent application.

---

**16.** Of course, the fact that a complaint may allege two or more predicate acts of racketeering does not necessarily mean that a "pattern of racketeering" has been adequately established for purposes of the RICO statute. *See generally*

*H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989). This issue is addressed below in Section IV(A)(2), *infra.*

3. In the course of preparing the patent application, Nalco's attorneys mailed to Kisalus both draft and final versions of the application.

4. In the course of preparing the patent application, Nalco's attorneys also consulted with Kisalus by means of interstate telephone calls.

5. On or about February 24, 1987, the finalized patent application was mailed to the United States Patent and Trademark Office for filing.

6. After preparing a second patent application, Nalco's patent attorneys, on or about June 15, 1987, caused that application to be mailed to the United States Patent and Trademark Office for filing.

7. In connection with the sales of its additive, Nalco mails invoices and correspondence regarding the sales to its purchaser throughout the United States.

Assuming for the time being that the complaint adequately alleges that defendants acted jointly with the intent to defraud Nalco of its trade secret, and adequately identifies the particulars of each of the above mailings and wire communications, these mailings and wire communications are sufficient to satisfy the two-act requirement for all of the defendants.

Thus, it is somewhat puzzling that plaintiff appears to concede that the complaint does no more than allege that each defendant committed at least one predicate act of racketeering. *See* Plaintiff's Mem. at 6. So long as the scheme to defraud and the mail and wire communications made in connection with that scheme have been adequately set forth in the complaint, each of those communications can be deemed a separate predicate act of racketeering "committed" by each of the defendants.

Plaintiff does not argue this principle, however, and instead relies upon the theories of conspiracy and aider and abettor to satisfy the two-act requirement. Plaintiff maintains that although any individual defendant may have only committed one act of racketeering, the acts of each defendant may be attributed to one another because they conspired with and aided and abetted one another in accomplishing the objectives of the scheme to defraud Davis Chemical. However, the allegations of the complaint are not sufficient to satisfy the two-act requirement by means of either conspiracy or aider and abettor liability, and given the possibility that plaintiff may resort to the same argument if it files an amended complaint, the shortcomings of the complaint in this respect merit discussion.

■■■■ As discussed above, a conspiracy to commit the offense of mail fraud, wire fraud, or the interstate transportation of stolen property does not qualify as a predicate act of racketeering for purposes of satisfying RICO's two-act requirement. However, because conspiracy principles allow the attribution of one person's acts to another individual, conspiracy allegations can sometimes serve as a vehicle for satisfying the two-act requirement. The district court in *Celpaco, Inc. v. MD Papierfabriken, supra,* explained the parameters for use of this device:

> The rule that requires each defendant to have personally engaged in racketeering activity may be relaxed as to those RICO claims founded upon an enterprise that is itself a conspiracy, so long as at least two acts of racketeering activity are committed by members of the enterprise and the acts are in furtherance of the conspiracy.

686 F.Supp. at 992 n. 13, citing *Rich–Taubman,* 587 F.Supp. at 879. *See also Wilson,* 709 F.Supp. at 152. Here, defendants argue what is implicit in both *Celpaco* and *Rich–Taubman,* namely, that plaintiff cannot rely upon conspiracy allegations to satisfy the two-act requirement when the alleged enterprise is something other than a conspiracy—a corporation like Nalco, for example. The Court agrees, for two reasons. First, courts have permitted reliance upon conspiracy allegations to meet the two-act requirement only in situations where the alleged enterprise is a conspiratorial association of individuals, and plaintiff offers no reason to expand use of the exception beyond this circumstance. Second, the logic of this limitation is inherent in the nature of the particular conduct proscribed by § 1962(c). The offense ad-

dressed by § 1962(c) is the conduct of an enterprise through a pattern of racketeering activity. Thus, in contrast to the role which the enterprise plays for purposes of the other subsections of § 1962, in § 1962(c) cases the enterprise serves as the vehicle for racketeering activity. If such an enterprise is nothing but a conspiracy among several individuals, then it is acceptable to attribute the acts of one individual member of the enterprise to the other members as the law would permit in any other conspiracy case, for each has joined in the common goal of achieving an illicit end. But if the enterprise is not a conspiracy—a legitimate corporation, for example—then there is no quality inherent in the nature of the enterprise which would permit the acts of one member of the enterprise to be attributed to the other members. There may be innocent members of such an enterprise, in addition to culpable ones. In this context, liability must be limited to those who have personally engaged in two or more acts of racketeering activity. One might argue that the corporation itself is legitimate, but that its individual employees and/or directors have conspired to conduct its affairs through a pattern of racketeering activity. Such an argument supplies the foundation for a RICO conspiracy claim under § 1962(d), however, as opposed to § 1962(c).

In this case, plaintiff has alleged that Nalco, rather than a conspiracy among the defendants, constitutes the enterprise for purposes of its RICO claim. Consequently, under the rule set forth in *Celpaco* and *Rich–Taubman*, plaintiff may not rely upon conspiracy theory to establish that each of the defendants has engaged in at least two acts of racketeering activity.

■ Moreover, even if the conspiracy were a proper means by which to attribute the acts of one defendant to the other defendants in this case, the conspiracy allegations contained in the complaint would still be inadequate to serve this purpose. In order to properly plead a conspiracy, the plaintiff must allege facts which evince each defendant's agreement to participate in "what he or it knew to be 'a collective venture toward a common goal.'" *Celpaco,* 686 F.Supp. at 990, *quoting Laterza v.*

*American Broadcasting Co.,* 581 F.Supp. 408, 412–13 (S.D.N.Y.1984). *See also Midwest Grinding Co. v. Spitz,* 716 F.Supp. 1087, 1094 (N.D.Ill.1989) (Rovner, J.) ("[S]ince conspiracy rests on agreement, the plaintiff must allege with some particularity facts sufficient to show an agreement between the parties to inflict the alleged wrong.") The complaint is utterly devoid of allegations sufficient to satisfy this requirement. Although there are occasional allegations in the complaint indicating that one defendant performed a particular act with the knowledge and consent of another defendant (*see, e.g.,* ¶¶ 6, 7), there are no allegations which support the conclusion that each defendant agreed to participate in a joint effort to defraud Davis Chemical of its trade secret. In view of this omission, the Court concludes that plaintiff has not adequately alleged the existence of a conspiracy among the defendants.

■ Aider and abettor liability similarly fails as a tool to satisfy the two-act requirement in this case. As an initial matter, nowhere in the complaint has plaintiff purported to plead aider and abettor liability, and it appears that plaintiff's assertion of such liability was more of an afterthought raised in response to defendants' motion to dismiss than something which plaintiff truly intended to allege. Moreover, although plaintiff contends that the facts alleged in the complaint are sufficient to support an inference of the aider and abettor liability, in fact the complaint lacks the requisite specificity to support this claim. In *Zola v. Gordon, supra,* 685 F.Supp. at 375 n. 27, the court outlined the allegations necessary to support a claim of aiding and abetting:

> [A] plaintiff must allege three elements: first, the existence of an independent wrong committed by the primary offender; second, the rendering of substantial assistance to the primary wrongdoer by the aider and abettor; and, third, the requisite scienter on the aider and abettor's part.

*See also FMC Corp. v. Boesky,* 727 F.Supp. 1182, 1200 (N.D.Ill.1989) (Williams, J.); *Celpaco,* 686 F.Supp. at 989 n. 8. A review of the complaint reveals that it lacks allegations sufficient to meet these require-

ments. Nowhere does the complaint identify an independent wrong committed by a particular defendant and indicate that such a defendant was substantially assisted by another defendant, acting with the requisite intent, in accomplishing this wrong. Accordingly, plaintiff's *post hoc* resort to aider and abettor liability as a means to satisfy the requirement that each defendant has engaged in at least two predicate acts of racketeering is unavailing.

#### b. *Failure to allege fraud with particularity*

■ Defendants also contend that plaintiff has failed to plead the predicate acts of mail and wire fraud with particularity as required by Fed.R.Civ.P. 9(b). In contrast to Fed.R.Civ.P. 8(a)(2), which simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Courts have been particularly scrupulous in adhering to the dictate of Rule 9(b) in the RICO context. Thus, a plaintiff who relies upon acts of mail and wire fraud as the basis for a RICO claim must do more than outline a scheme and make loose references to mailings and telephone calls; rather, the plaintiff must be careful to allege such particulars as who initiated the communication, when the communication took place, the contents of the communication, and how that communication furthered the scheme to defraud. *See, e.g., Landon v. GTE Communications Services, Inc.,* 696 F.Supp. 1213, 1218 (N.D.Ill.1988) (Aspen, J.); *Celpaco,* 686 F.Supp. at 989. This degree of specificity is made necessary in part by RICO's requirement that the predicate acts of racketeering be "ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions." *Balabanos v. North American Inv. Group, Ltd.,* 684 F.Supp. 503,

507 (N.D.Ill.1988) (Aspen, J.), *citing Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986). (*See* § IV(A)(2), *infra.*) Without an adequately detailed description of the predicate acts of mail and wire fraud, a complaint does not provide either the defendants or the court with sufficient information to determine whether or not a pattern of racketeering activity has been established. *Balabanos,* 684 F.Supp. at 507; *see also Ray v. Karris,* 780 F.2d 636, 644–45 (7th Cir.1985). Furthermore, as the court noted in *Celpaco:*

> [S]tringent adherence to the particularity requirement is important in a case such as this where the predicate fraud allegations provide the only link to federal jurisdiction, and the opportunity for an award of treble damages—each of which might serve as significant *in terrorem* settlement leverage.

686 F.Supp. at 989.

■ Although the complaint in this case is more than sufficient to have placed defendants on notice of the general wrong with which they have been charged, it is not sufficiently particular with respect to the predicate racketeering offenses. The complaint makes broad references to incidents of mail and wire fraud, in addition to shipments of stolen property in interstate commerce (Complaint ¶ 15), but largely fails to describe these incidents in any greater detail. Indeed, the only mailings described with any degree of specificity are two of those made in connection with the applications for a patent on Nalco's alkylation additive. (*See* Complaint, ¶¶ 10, 11.) Paragraph 8 of the complaint alleges Nalco's "unlawful receipt" of plaintiff's confidential manual on REX–121A but is silent as to what person or persons mailed and received that manual, or whether it was mailed at all. No other mailings or telephone calls are specified with any detail. The same is true of the transportation of stolen property in interstate commerce allegations.[17] Consequently, although the

---

**17.** The Court is mindful that because the provisions of §§ 2314 and 2315 applicable to this case criminalize simply the "knowing" interstate transportation and receipt of stolen property, the purported violations of these provisions do not amount to acts of fraud which must be pleaded with particularity. *P.M.F. Services v.*

*Grady,* 681 F.Supp. 549, 554 (N.D.Ill.1988) (Shadur, J.) However, when violations of §§ 2314 and 2315 supply the foundation for a RICO claim, the plaintiff bears a heavier burden in pleading the particulars of such violations. *Construction Technology, Inc. v. Lockformer Co.,*

complaint may adequately describe an overall scheme to misappropriate plaintiff's trade secret, and although certain mailings have been described in relative detail, on balance the complaint does not adequately describe the manner in which each of the defendants participated in the broadly-referenced predicate offenses of racketeering, when and how such offenses took place, and how they furthered the overall scheme to defraud plaintiff. *See Midwest Grinding*, 716 F.Supp. at 1093. Moreover, because the validity of plaintiff's RICO claim rests in part upon whether or not a pattern of racketeering activity has been alleged, the failure to describe in sufficient detail the predicate offenses of mail fraud, wire fraud, and, the interstate transportation of stolen property leaves the RICO claim without an adequate foundation. In these circumstances, the complaint cannot pass muster under Rule 9(b). *See Balabanos*, 684 F.Supp. at 507 (where complaint specified some but not all of the predicate acts of mail and wire fraud, it did not comply with the requirements of Rule 9(b)).[18]

### 2. Failure to allege a pattern of racketeering

■ Even if the Court were to assume that plaintiff had alleged the predicate offenses underlying the RICO claim with sufficient particularity, it would nonetheless conclude that the allegations do not establish a pattern of racketeering activity. As noted above, in order to plead a pattern of racketeering, the plaintiff must allege that each defendant committed at least two acts of racketeering activity. *See* page 1509, *supra.* Yet, two acts of racketeering alone do not a pattern make. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346

(1985). The plaintiff must additionally demonstrate "that the racketeering predicates are related, *and* that they amount to or pose a threat of continuing criminal activity." *Northwestern Bell*, 109 S.Ct. at 2900 (emphasis in original). The first of these requirements, relationship, is satisfied if the predicate acts of racketeering share " 'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id., quoting* Title X of the Organized Crime Control Act of 1970, 18 U.S.C. § 3575(e). *See also Sutherland v. O'Malley*, 882 F.2d 1196, 1204 (7th Cir.1989). In order to satisfy the second requirement of continuity, the plaintiff's allegations must show a "continuity of racketeering activity, or its threat, *simpliciter.*" *H.J.*, 109 S.Ct. at 2901. In other words, the plaintiff must either demonstrate that the defendants have engaged in racketeering activity over a substantial period of time in the past, or that the defendants have embarked upon a course of racketeering activity which threatens to continue into the future. *Id.* at 2902.

Plaintiff relies upon two sets of allegations to establish a pattern of racketeering activity. Paragraphs 13 and 14 of the complaint allege that Nalco has marketed its alkylation additive in competition with plaintiff since 1986, and has caused plaintiff to lose sales of REX–121A. In plaintiff's view, these allegations establish that Davis Chemical has suffered and continues to suffer repeated economic injury from defendants' alleged misappropriation of its trade secret and are therefore sufficient to demonstrate an ongoing pattern of racketeering activity. Alternatively, plaintiff looks to ¶ 16 to satisfy the pattern requirement. As the Court has already observed, that paragraph alleges that Nalco has, on

---

704 F.Supp. 1212, 1230–31 (S.D.N.Y.1989). *See also Beverly Hills Design Studio (N.Y.) Inc. v. Morris*, 1989 WL 85867 at printed page 6 (S.D. N.Y. July 26, 1989) (when §§ 2314 and 2315 violations allegedly took place in furtherance of fraudulent scheme and form the basis for a RICO claim, they must be pleaded with particu-.larity); *P.M.F. Services*, 681 F.Supp. at 554 n. 10 (noting this position but expressing no position).

18. The court is mindful that plaintiff has not yet enjoyed the opportunity to take discovery in this action. However, that fact does not excuse the lack of particularity in the complaint. The parties' memoranda reveal that Davis Chemical has engaged in substantial discovery in the pending state court action regarding the same facts which underlie this action.

numerous occasions over the last decade, obtained and analyzed chemical product samples from its other competitors and used the information in the development of its own product line. Plaintiff argues that these allegations show that it is part of Nalco's regular business practice to misappropriate the trade secrets of its competitors, and consequently that Nalco and the other defendants have engaged in a pattern of racketeering activity. *See* page 1506, *supra.* As set forth below, the Court has concluded that neither set of allegations suffices to establish a pattern of racketeering activity.

#### a. The course of conduct with respect to Davis Chemical

Defendants argue that the allegations concerning their conduct vis a vis Davis Chemical and REX–121A fail to demonstrate a pattern of racketeering activity because they establish only a single scheme to defraud a single victim. *See Lipin Enterprises Inc. v. Lee,* 803 F.2d 322, 324 (7th Cir.1986) ("There must be some indication of a 'threat of continuing activity' by the defendants, not just one instance of fraud with a single victim."); *Midwest Grinding,* 716 F.Supp. at 1095. Plaintiff concedes that these allegations describe only a single scheme and name only a single victim; nonetheless, it asserts that with each sale of Nalco's alkylation additive, defendants have inflicted a distinct financial injury upon plaintiff. Plaintiff argues that such a series of repeated and ongoing economic injuries is sufficient to demonstrate a pattern of racketeering activity. (*See* Plaintiff's Mem. at 7–8.)

▋ The Seventh Circuit has articulated a multi-factor test for use in assessing whether a defendant's alleged conduct rises to the level of a pattern of racketeering activity. *See generally Jones v. Lampe,* 845 F.2d 755, 756–57 & n. 4 (7th Cir.1988) (collecting cases). Pursuant to that test, the following factors must be weighed:

(1) the number and variety of predicate acts of racketeering;

(2) the length of time over which the predicate acts occurred;

(3) whether the defendants' conduct amounted to a single scheme or several separate schemes;

(4) the number of victims; and

(5) whether the defendants inflicted a single injury or multiple, distinct injuries.

*Id.* at 757. *See also New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1478 (7th Cir.1990).[19] No one among these factors is to be considered dispositive. Rather, as the court observed in *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48 (7th Cir.1989):

[T]he focus of the inquiry is to determine whether the predicate acts "can fairly be viewed as constituting separate transactions," inflicting separate injuries and thus can be said to represent a pattern.

*Id.* at 50, *quoting Morgan v. Bank of Waukegan, supra,* 804 F.2d at 975. Nonetheless, if a rule can be drawn from the case law in this Circuit, it is that a complaint alleging a single scheme and a single victim will normally be found to fall short of establishing a pattern of racketeering activity. *See New Burnham Prairie Homes,* 910 F.2d at 1478–79; *Midwest Grinding,* 716 F.Supp. at 1095.

▋ Applying these factors to this case, the Court finds that defendants' conduct with respect to Davis Chemical and REX–121A does not amount to a pattern of racketeering activity. Although plaintiff has alleged multiple acts of racketeering, including mail fraud, wire fraud, and the transportation of stolen property in interstate commerce, these acts occurred over a relatively short period of time and related to but a single scheme—the alleged attempt to misappropriate plaintiff's trade secret. *Cf. Sutherland,* 882 F.2d at 1205 & n. 8 (multiple acts of mail fraud did not amount to pattern of racketeering where

---

**19.** The Seventh Circuit has continued to adhere to this multi-factored analysis in the wake of the Supreme Court's decision in *Northwestern Bell,* finding this framework consistent with the Supreme Court's "elastic" approach to the concepts of continuity and relationship. *See Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48, 51 (7th Cir.1989). *See also U.S. Textiles, Inc. v. Anheuser–Busch Companies,* 911 F.2d 1261, 1267 (7th Cir.1990).

they took place over a five-month period and toward a single end—diversion of settlement proceeds away from plaintiff). Moreover, the only party injured by this scheme was Davis Chemical. Thus, insofar as the allegations of ¶ 16 are excluded from consideration, the complaint establishes no more than the paradigmatic one-scheme, one-victim scenario which the Seventh Circuit has repeatedly held to fail the pattern requirement of RICO. *See, e.g., New Burnham Prairie Homes,* 910 F.2d at 1478–79; *Jones,* 845 F.2d at 755; *Morgan,* 804 F.2d at 976.

Plaintiff's reliance upon *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1304–05 (7th Cir.1987), *cert. denied,* — U.S. —, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989), is unavailing. In *Liquid Air,* the court acknowledged that a single-scheme, single-victim scenario may satisfy the pattern requirement where the particular predicate acts alleged represent distinct, repeated injuries inflicted upon the plaintiff. *Accord Appley v. West,* 832 F.2d 1021, 1028 (7th Cir.1987).[20] However, *Liquid Air* and *Appley* establish only a narrow exception to the substantial line of cases holding that a single scheme which involves a single victim does not qualify as a pattern of racketeering, *Jones,* 845 F.2d at 755, and the facts which plaintiff has alleged do not fit within that exception. Each of the predicate acts which plaintiff has alleged relates to the defendant's alleged efforts to obtain a sample of REX–121A, analyze its contents, develop a product mimicking its formula, and patent the result. To this extent, the predicate acts alleged establish what amounts to a single injury, the misappropriation of Davis Chemical's trade secret. Therefore, unlike the predicate acts of racketeering alleged in *Liquid Air* and *Appley,* the predicate acts here do not give rise to distinct injuries. *See SK Hand Tool Corp. v. Dresser Industries, Inc.,* 852 F.2d 936, 943 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 3241, 106 L.Ed.2d 589 (1989) (*Liquid Air* inapplicable where each predicate act did not cause separate harm to plaintiff).

Plaintiff urges the Court to look beyond the alleged misappropriation to the subsequent sales of Nalco's alkylation additive. However, none of the predicate acts which plaintiff has alleged with any particularity concern such sales, and it is these predicate acts alone to which the Court must look in determining whether a pattern of racketeering has been established. *See Balabanos v. North American Investment Group, Ltd., supra,* 684 F.Supp. at 507. Paragraphs 13 and 15(C) of the complaint refer to the sales of Nalco's alkylation additive and certain mailings routinely made in connection with them; yet, assuming that plaintiff intended these references to establish separate predicate offenses of mail fraud, the allegations have

**20.** In *Liquid Air,* the plaintiff had leased thousands of compressed gas cylinders to the defendant, which distributed compressed gas. Eventually, the defendant decided to terminate its relationship with the plaintiff. Under the parties' lease agreement, the defendant was obligated at this point to return all of the cylinders to the plaintiff, and to pay rental fees or the replacement cost upon any outstanding cylinders. Instead of returning many of the cylinders, however, defendant transmitted a series of 19 shipping orders to plaintiff which falsely represented that the cylinders had been returned. Plaintiff ultimately discovered the fraud and filed suit against the defendant. The plaintiff's RICO claim was based upon the 19 shipping orders, which for purposes of the complaint were characterized as 19 predicate acts of mail and wire fraud. Under these circumstances, the Seventh Circuit concluded that each shipping order was properly viewed as a separate transaction for purposes of the pattern requirement: "Each time an invoice was prepared, it deprived [the plaintiff] of its entitlement to rent or replacement value. Therefore, each act resulted in a distinct injury to [the plaintiff] and a concomitant benefit to [the defendant]." 834 F.2d at 1304–05.

In *Appley,* the defendant had served as the plaintiff's attorney and investment advisor. After the plaintiff heeded the defendant's advice to open several bank accounts with the defendant as co-signator, the defendant succeeded in absconding with hundreds of thousands of dollars by having the bank statements and cancelled checks mailed to him rather than the plaintiff. The plaintiff's RICO claim was based upon two acts of mail fraud. Although the Seventh Circuit acknowledged that the case involved one overall scheme to defraud the plaintiff alone, it nonetheless concluded that the two acts of mail fraud satisfied the pattern requirement because each mailing concealed a separate conversion of funds from a separate bank account. 832 F.2d at 1028.

not been set forth with the particularity required by Rule 9(b). *See* § IV(A)(1)(b), *supra.*

██ Moreover, although Nalco's sales of the alkylation derivative are certainly relevant to the question of damages, they are insufficient to demonstrate the pattern of repeated wrongdoing and resulting harm which RICO requires. The Seventh Circuit's opinion in *Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co., supra* ("*MCS*"), lends particular support to this conclusion. In that case, the plaintiff, MCS, had sold a mini-computer to the defendant, HABCO, and prepared software for use on that computer. When it installed the computer, MCS stored back-up copies of the software on the HABCO's premises. These copies included programs which MCS had prepared under contract specifically for the HABCO as well as other non-contract programs belonging to MCS. HABCO later duplicated the back-up copies and allegedly used several of the contract programs, in addition to MCS' non-contract programs, to develop new software both for HABCO's own internal use and for the use of its clients. In addition, MCS alleged that HABCO sold or licensed the use of unauthorized copies of the contract programs to the same types of clients which MCS served. The district court granted summary judgment in favor of HABCO on MCS' RICO claim, finding that MCS had failed to come forward with adequate proof of a pattern of racketeering activity. On appeal, the Seventh Circuit affirmed, rejecting MCS' argument that HABCO had committed a predicate act of racketeering each time it made use of the allegedly stolen software:

> If, as MCS alleged, the contract software at issue was proprietary to MCS, then when HABCO first copied that software it in essence stole the software. HABCO's subsequent use of the allegedly stolen software cannot be characterized as subsequent thefts. When a thief steals $100, the law does not hold him to a new theft each time he spends one of those dollars. The same is true of the back-up tapes. Indeed, the copying of the back-up tapes might be characterized as the first allegedly unauthorized copying of

> *both* the non-contract and the contract software. If so characterized, then at that point HABCO had stolen all of the software. Its subsequent and varied uses of the stolen software would not constitute new offenses but would go only to the issue of damages. This is simply not a case that involves long-term criminal conduct or activity that could, in common-sense, be called a pattern of racketeering.

883 F.2d at 51 (emphasis in original). *MCS* precludes plaintiff from characterizing sales of the alkylation additive which Nalco allegedly derived from REX–121 as further predicate acts of racketeering. For purposes of the RICO analysis, the wrong against Davis Chemical was complete once defendants procured a sample of REX–121A and copied the formula. Nalco may continue to reap sales from this alleged scheme which Davis Chemical, in turn, loses; but to the extent Davis Chemical suffers ongoing effects of this ilk, they relate solely to the question of damages and do not suffice to meet the pattern requirement of RICO.

#### b. The course of conduct with respect to other competitors

██ Plaintiff alternatively maintains that defendants' alleged misappropriation of the formula for REX–121A, taken in conjunction with comparable wrongs which Nalco has allegedly committed against other competitors, suffices to establish a pattern of racketeering activity. As noted, ¶ 16 of the complaint alleges that Nalco has, in a number of instances over the past ten years, obtained product samples from its other competitors and used the information gleaned from these samples in the development of its own products, in much the same way that it obtained the sample of REX–121A and used the information it acquired from that sample to develop its alkylation additive. Plaintiff thus reads the complaint to establish that the racketeering activity in which defendants allegedly engaged vis a vis Davis Chemical constitutes Nalco's regular way of doing business, and that the complaint therefore meets the pattern requirement. *See Northwestern Bell*, 109 S.Ct. at 2092 ("the threat of continuity may be established by showing that the predicate acts or offenses

are part of an ongoing entity's regular way of doing business"). Accepting the allegations as true, the complaint may establish that *covert product sampling* constitutes Nalco's modus operandi.[21] Nonetheless, the complaint fails to satisfy the pattern requirement because it does not establish that *racketeering activity* constitutes Nalco's regular way of doing business.

Although ¶ 16 alleges a course of conduct which is similar to the alleged misappropriation of Davis Chemical's formula for REX–121A, this other conduct is outlined in only the most general terms, and certainly not with enough particularity to establish that Nalco has committed other racketeering offenses. In *John v. Phelps*, 713 F.Supp. 1161, 1166 (N.D.Ill.1989), Judge Norgle held that predicate acts committed in furtherance of a single scheme to defraud could not be transformed into a pattern of racketeering by reference to comparable allegations of fraud against the defendants in two other lawsuits. He observed that the predicate acts of fraud must be alleged with particularity, and concluded that the plaintiff's general reference to conduct at issue in other litigation was simply insufficient to allege a specific act of racketeering. *Id.* The same reasoning applies here. Paragraph 16 does not purport on its face to state an offense of mail fraud, wire fraud, interstate transportation of stolen property in interstate commerce, or any other crime which qualifies as a predicate act of racketeering. At the same time, the facts alleged in this paragraph do not support the inference that such an offense was committed. Plaintiff does not suggest, for example, that Nalco ever carried stolen product samples across state lines, or used the mails or telephone in execution of a scheme to defraud its other competitors. Accordingly, ¶ 16 does not supply additional facts sufficient to support the claim that Nalco has routinely conducted its business through racketeering activity.

---

21. Nalco vigorously contends that there is nothing improper or illegal in obtaining samples of its competitors' products. However, in ruling upon the motion to dismiss, the Court must accept the allegations of the complaint as true and construe both the allegations and the inferences which reasonably may be drawn from

## B. *Section 1962(a)*

Plaintiff has also asserted that each of the defendants is liable under § 1962(a). (Complaint, ¶ 18.) In relevant part, this section provides:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Defendants challenge plaintiff's § 1962(a) claim on four grounds. First, defendants argue that Nalco cannot be held liable under § 1962(a) on the basis of *respondeat superior* for the actions which its employees allegedly took in this case. Defendants next argue that although the complaint alleges in general terms that they derived income from a pattern of racketeering which was subsequently used in the operation of Nalco, it does not sufficiently specify what the income was, where it came from, or exactly how it was used. Third, defendants contend that the § 1962(a) claim is defective because the complaint alleges no injury resulting from the use or investment of racketeering income. Finally, defendants argue that the § 1962(a) claim, like plaintiff's claim under § 1962(c), fails because the predicate acts of racketeering alleged in the complaint do not constitute a pattern of racketeering activity. The Court addresses each of these arguments below.

### 1. Liability of Nalco

■ A corporation, like an individual, may be held liable as a "person" under RICO. *Liquid Air, supra,* 834 F.2d at 1306 & n. 5; 18 U.S.C. § 1961(3). However, because a corporation can act only

---

them in a manner most favorable to the plaintiff. *Doe on behalf of Doe v. St. Joseph's Hospital of Fort Wayne,* 788 F.2d 411, 414 (7th Cir. 1986). Moreover, the Court is in no position at this stage of the proceedings to pass upon the propriety of the conduct alleged in the complaint.

through its officers and employees, questions naturally arise as to the appropriate limits upon corporate liability, particularly in view of RICO's treble damages provision. *See Parnes v. Heinold Commodities, Inc.,* 548 F.Supp. 20, 24 & n. 9 (N.D.Ill. 1982) (Shadur, J.) (expressing concern at the prospect of subjecting corporation to treble damages for the acts of its low level employees). Here, defendants contend that the complaint fails to state a claim against Nalco under § 1962(a) because plaintiff does not allege that any member of Nalco's management was aware of the purported scheme to misappropriate the formula for REX–121A. Plaintiff apparently concedes that no high ranking individual within Nalco is implicated by the complaint, but nonetheless maintains that vicarious liability may be imposed upon Nalco for the misdeed which its lower level employees committed in the course of their employment and which benefitted the company. (*See* Plaintiff's Mem. at 10.) In view of the limits which courts have imposed upon corporate liability under § 1962(a), defendants' position is better taken in this case.

█ When high level corporate directors, officials or employees engage in a pattern of racketeering activity, the corporation itself is subject to liability under § 1962(a), for corruption which reaches the upper echelons of the corporation assumes the imprimatur of corporate policy. *See D & S Auto Parts, Inc. v. Schwartz,* 838 F.2d 964, 967–68 n. 5 (7th Cir.), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). Indeed, in these circumstances, the argument is really one for direct, rather than vicarious liability. *Id.* However, none of the individuals named as defendants qualify as upper level officers or employees of Nalco. The complaint identifies Clarence Davis as a salesman for Nalco, Kisalus as a chemist, and Cravey as Kisalus' supervisor. (Complaint, ¶¶ 4, 5.) Reynolds, who was the marketing manager for Nalco's product development group (*see id.*), arguably held a somewhat higher position within Nalco. Nonetheless, as noted above, plaintiff implicitly concedes that neither Reynolds nor any of the other individual defendants held a position of sufficient authority to subject Nalco to direct liability

for their alleged misconduct. Thus, the Court must determine whether and under what circumstances Nalco could be held vicariously liable under § 1962(a) for the racketeering activity in which its lower level employees are alleged to have engaged.

█ This question does not lend itself to simple resolution under Seventh Circuit case law. In *D & S Auto, supra,* the Court of Appeals considered vicarious liability and found it to be "inconsistent with this court's approach to direct RICO liability." 838 F.2d at 966. *See also id.* at 968. A number of courts have interpreted *D & S Auto* as rejecting unequivocally the doctrine of *respondeat superior* under RICO. *See Langley v. American Bank of Wisconsin,* 738 F.Supp. 1232, 1244 (E.D.Wis.1990); *FMC Corp. v. Boesky, supra,* 727 F.Supp. at 1199; *Hybert v. Shearson Lehman/American Express, Inc.,* 688 F.Supp. 320, 329 (N.D.Ill.1988) (Grady, J.). *See also United States v. United Skates of America,* 727 F.Supp. 430, 431 n. 4 (N.D.Ill. 1989) (Aspen, J.). ("we believe that at the very least, it is apparent that something more than respondeat superior is required before a corporation will be held liable for the acts of its employees"). Yet, there are reasons to question whether the Court of Appeals intended an unconditional rejection of the *respondeat superior* doctrine vis a vis § 1962(a). First, although the court purported to address vicarious liability under both § 1962(a) and § 1962(c), the First and Eighth Circuit decisions which the court expressly elected to follow, *see id.* at 968, had rejected vicarious liability only under § 1962(c). *See Luthi v. Tonka Corp.,* 815 F.2d 1229, 1230 (8th Cir.1987); *Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 32 (1st Cir.1986). *See also Harrison v. Dean Witter Reynolds, Inc.,* 695 F.Supp. 959, 962 (N.D.Ill.1988) (Duff, J.) (making the same observation). Moreover, strikingly absent from *D & S Auto Parts* is any mention of the Seventh Circuit's prior opinion in *Liquid Air. Corp. v. Rogers, supra,* where the court held that "[r]espondeat superior is ... entirely appropriate under both subsections (a) and (b) [of § 1962], so long as [the defendant corporation] derived a benefit from the viola-

tions." 834 F.2d at 1307. *See In re Conti-Commodity Services, Inc. Securities Litigation,* 733 F.Supp. 1555, 1566 (N.D.Ill. 1990) (Hart, J.) Thus, if *D & S Auto* is taken to reject vicarious liability of any sort under RICO, one must assume that the Court of Appeals meant to overrule *Liquid Air* on this point, but failed to do so explicitly. Given that *D & S Auto* followed *Liquid Air* by slightly less than three months, and the panel which decided *D & S Auto* included two of the same judges who sat on the *Liquid Air* panel, *see Harrison,* 695 F.Supp. at 692, such an assumption is unwarranted.

Judge Duff has attempted to reconcile *D & S Auto* with *Liquid Air,* and concluded that the *D & S* holding is limited to circumstances in which the corporation is ignorant of the misdeeds of its employees. *Harrison,* 695 F.Supp. at 962. Thus, in his view, a plaintiff must allege that the upper echelons of corporate management knew of and acquiesced in the malfeasance of lower level employees in order to impose RICO liability upon a corporate defendant. *Id.* at 962–63. This conclusion finds support in a more recent Seventh Circuit decision, *SK Hand Tool Corp. v. Dresser Industries, Inc., supra.* In that case, lower level employees of the defendant corporation had acted to conceal the financial distress of the company's hand tool division from both the corporation's management and the public. The plaintiff subsequently purchased that division, not knowing that its true financial state had been concealed. In this context, the Court of Appeals found that vicarious liability could not be imposed upon the defendant corporation. 852 F.2d at 941. The court acknowledged that the corporation had profited from the fraud, in that it was able to sell the ailing division at an inflated price. *Id.* However, the corporations' own officers and directors had been deceived by the concealment; thus, the corporation was merely an "unwilling conduit" of the lower level employees' misdeeds. *Id.* The court's conclusion in *SK Hand Tool* suggests that the rule articulated by Judge Duff in *Harrison* is correct, and that vicarious liability may be imposed upon a corporate defendant under § 1962(a) only if the corporation, through

its upper level employees or officers, knew of and acquiesced in the racketeering conduct of its lower level employees. This rule is also consistent with the form of direct corporate liability approved in *D & S Auto,* 838 F.2d at 967–68 n. 5, because a corporation whose management is aware of illegal activity afoot among its employees and acquiesces in such conduct is arguably no less culpable than one whose upper echelon officers or directors engage in the same misconduct.

 The complaint in this case does not allege that any member of Nalco's management was aware of the alleged scheme among the individual defendants to misappropriate the formula for REX–121A. There are occasional references in the complaint to some action allegedly taken by Nalco itself. *See, e.g.,* Complaint ¶ 8 ("Nalco also unlawfully received ... a copy of Plaintiff's confidential manual which describes REX–121A and sets forth the procedures for its use...."). Such references are insufficient to establish that Nalco's management was aware of the individual defendant's alleged misdeeds, however, and the complaint is devoid of any mention of an upper level employee, officer, or director of Nalco who had knowledge of any of the racketeering activities alleged in the complaint. Accordingly, the complaint lacks the element of upper level knowledge and acquiescence which might supply a foundation for vicarious liability under § 1962(a).

Plaintiff nonetheless argues that *Liquid Air, supra,* permits the Court to impose vicarious liability upon Nalco for the acts of lower level employees which were committed in the course of their employment and which benefitted Nalco. *See* 834 F.2d at 1307. However, in *Liquid Air,* liability was imposed upon the corporate defendant for the acts of its president, not those of a lower level employee. Furthermore, the rule which plaintiff proposes fails to account for *SK Hand Tool,* in which the employees' misdeeds had operated to the benefit of the corporation but the court nonetheless rejected vicarious liability. *See* 852 F.2d at 941. Finally, as the Court

has already concluded, the principle which can be gleaned from *Liquid Air, D & S Auto, SK Hand Tool,* and *Harrison* is that the upper echelons of a corporation must either have been directly involved in or at least have been aware of and acquiesced in the racketeering conduct for vicarious liability to be permissible under § 1962(a). Plaintiff's complaint fails to establish that Nalco's management either participated in or countenanced the alleged misconduct. Accordingly, the complaint fails to state a claim against Nalco under § 1962(a).

### 2. Particularity of the allegations regarding the use or investment of income derived from racketeering.

■ Defendants argue that plaintiff's § 1962(a) claim fails because the allegation that the "[d]efendants and each of them derived income, directly or indirectly, from a pattern of racketeering activity ... which was used in the operation of Nalco" (Complaint ¶ 18), is not sufficiently specific. This argument is well taken as to the individual defendants.

■ Insofar as Nalco is concerned, although ¶ 18 simply tracks the language of the statute, it is sufficiently particular in the context of the other allegations in the complaint to place defendants on notice as to the critical elements of plaintiff's claim. It is evident from the complaint that the income in question was derived from the sales of Nalco's alkylation additive, and that this income was retained by Nalco.[22]

However, the complaint is deficient as to the individual defendants. Although ¶ 18 conclusorily alleges that all of the defendants received income from the alleged racketeering activity, the balance of the complaint suggests that only Nalco itself received any income as the fruit of such activity. Thus, the complaint fails to state a claim against the individual defendants under § 1962(a), because only persons "who [have] received any income derived, directly or indirectly, from a pattern of racketeering activity" are subject to liability. 18 U.S.C. § 1962(a).

### 3. Failure to allege an injury resulting from the use or investment of racketeering income

■ Defendants next argue that the complaint fails to state a claim under § 1962(a) because no injury resulting from defendants' use or investment of racketeering income has been alleged. In *Midwest Grinding Co. v. Spitz, supra,* 716 F.Supp. at 1090–92, this Court joined the majority of other courts which have addressed the issue and held that § 1962(a) provides a remedy solely for an injury resulting from the use or investment of income derived from racketeering activity, not for harm resulting from the racketeering activity itself. The Court found principal support for this position in the plain language of § 1962(a), which, unlike § 1962(c), does not proscribe racketeering activity *per se,* but the use or investment of income derived from racketeering activity. *Id.* at 1090–91. The complaint in this case does not allege that Davis Chemical was injured by reason of defendants' use or investment of the income earned on the sales of Nalco's alkylation additive, but only from the alleged misappropriation of its trade secret. As the Court explained in *Midwest,* such an injury may otherwise be actionable under § 1962(c), but not § 1962(a). *Id.* at 1090–92.

---

**22.** In contrast to subsections (b) and (c) of § 1962, subsection (a) does not require that the "person" receiving and investing income be separate and distinct from the "enterprise" in which the income is invested. *See Robinson v. City Colleges of Chicago, supra,* 656 F.Supp. at 560. *See also Masi v. Ford City Bank & Trust Co.,* 779 F.2d 397, 401–02 (7th Cir.1985). Thus, Nalco may be subject to liability as a perpetrator under § 1962(a) even though it is also the "enterprise" into which the defendants allegedly diverted racketeering income. *Id.*

Of course, § 1962(a) requires that there be an investment of income *"derived from the pattern of racketeering activity." Hemmings v. Barian,* 822 F.2d 688, 692 (7th Cir.1987) (emphasis in original). As the Court has already indicated, the allegations of the complaint do not suffice to establish a pattern of racketeering activity, even when Nalco's sales of the alkylation additive are taken into consideration. *See* § IV(A)(2), *supra,* and § IV(B)(4), *infra.* Thus, income derived from these sales cannot, for present purposes, be deemed income derived from a pattern of racketeering activity as required by RICO.

Plaintiff effectively asks the Court to reconsider its ruling in *Midwest Grinding,* noting that several judges in this district have concurred in the minority view and held that an injury sustained by reason of the underlying racketeering activity itself is actionable under § 1962(a). *See Capalbo v. PaineWebber, Inc.,* 694 F.Supp. 1315, 1320–21 (N.D.Ill.1988) (Norgle, J.); *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago,* 693 F.Supp. 666, 671–73 (N.D.Ill.1988) (Hart, J.), *judgment aff'd,* 877 F.2d 1333 (7th Cir.1989); *Continental Grain Co. v. Pullman Standard, Inc.,* 690 F.Supp. 628, 632–33 (N.D.Ill.1988) (Leinenweber, J.). However, the Court was cognizant of this line of authority when it decided *Midwest Grinding, see* 716 F.Supp. at 1090, and concluded that the contrary view adopted by other courts was better reasoned, *id.* at 1090–91. Accordingly, pending a definitive resolution of this issue by a superior court, this Court will continue to adhere to its decision in *Midwest Grinding. See Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago,* 877 F.2d 1333, 1340–41 & n. 1 (7th Cir.1989) (concurring opinion) (noting that Seventh Circuit has not yet addressed nature of injury required in order to state claim under § 1962(a)).

■■■ Plaintiff argues that the Seventh Circuit has in fact addressed the issue in both *Liquid Air Corp. v. Rogers, supra,* and *Haroco, Inc. v. American National Bank & Trust Co. of Chicago,* 747 F.2d 384 (1984), *aff'd,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). In *Liquid Air,* the court broadly stated that "[t]he measure of damages under civil RICO is the harm occasioned as a result of the predicate acts." 834 F.2d at 1310. However, liability in *Liquid Air* was premised not only upon § 1962(a), but upon all four

subsections of § 1962, *see* 834 F.2d at 1301 & n. 1; and the Court of Appeals did not purport to address the nature of the injury required in order to state a claim under each subsection. In *Haroco,* the court addressed the nature of the injury which must be alleged in order to state a claim under § 1962(c). The court concluded that "a civil RICO plaintiff need not allege or prove injury beyond an injury to business or property resulting from the underlying acts of racketeering." 747 F.2d at 398. Of course, this is the same conclusion that the Supreme Court reached in *Sedima S.P.R.L. v. Imrex Co., supra,* 473 U.S. 479, 493–500, 105 S.Ct. 3275, 3283–87, and *Haroco* was affirmed on this ground. *See* 473 U.S. 606, 105 S.Ct. 3291. However, neither *Sedima* nor *Haroco* purport to address the nature of the specific injury required under § 1962(a). As this Court observed in *Midwest Grinding,* the adoption of a liberal injury requirement for purposes of § 1962(c) does not justify the automatic application of the same requirement to § 1962(a), particularly when subsection (a) is framed in much narrower terms than subsection (c). 716 F.Supp. at 1091. Thus, the Court does not read either *Liquid Air* or *Haroco* to support the interpretation of § 1962(a) urged by plaintiff. *See id.*[23]

**4. Failure to allege a pattern of racketeering activity**

Finally, plaintiff's § 1962(a) claim fails on one additional ground. The Court has already concluded with respect to plaintiff's claim against the individual defendants under § 1962(c) that the predicate acts alleged in the complaint do not constitute a pattern of racketeering activity. *See* § IV(A)(2), *supra.* This conclusion renders plaintiff's § 1962(a) claim, as well as its

---

**23.** Plaintiff also argues that racketeering conduct which causes systemic harm to the marketplace is sufficient to support a cause of action under § 1962(a). For this proposition, plaintiff relies upon *Sedima, S.P.R.L. v. Imrex Co.,* 741 F.2d 482, 495–96 (2d Cir.1984), *rev'd,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), in which the Second Circuit stated:

RICO was not enacted merely because criminals break laws, but because mobsters, either through the infiltration of legitimate enterprises or through the activities of illegitimate enterprises, cause systemic harm to competi-

tion and the market, and thereby injure investors and competitors.... It is only when injury caused by this kind of harm can be shown, therefore, that we believe that Congress intended that standing to sue civilly should be granted.

The Court declines to adopt this standard for purposes of § 1962(a). The Second Circuit offered this interpretation of the injury requirement under subsection (c) of § 1962, not subsection (a). Moreover, the Supreme Court explicitly rejected this interpretation. *See* 473 U.S. at 493–500, 105 S.Ct. at 3283–87.

§ 1962(c) claim, deficient. Of course, § 1962(c) targets the operation of an enterprise through a pattern of racketeering activity, while § 1962(a) targets the use or investment of income derived from a pattern of racketeering in the operation of an enterprise. Nonetheless, it is evident from the language of both provisions that liability in each case is premised upon a pattern of racketeering activity. Therefore, defendants cannot be held liable under § 1962(a) for the use or investment of income derived from a pattern of racketeering activity when the complaint does not adequately allege that defendants engaged in a such a pattern of activity.

#### C. *Section 1962(d)*

■■■ Plaintiff has asserted a third RICO claim under § 1962(d), which prohibits a conspiracy to violate subsections (a), (b), or (c). (Complaint ¶ 19.) Defendants contend that this claim is also deficient because the complaint does not allege with particularity facts from which one may infer an agreement among the defendants to engage in a pattern of racketeering activity. In order to adequately state a claim under § 1962(d), "the plaintiff must allege that the defendants agreed to one of the uses or effects of that pattern of racketeering activity which the statute expressly prohibits, such as conducting the affairs of an enterprise through a pattern of racketeering activity...." *Midwest Grinding,* 716 F.Supp. at 1094, *citing United States v. Neapolitan,* 791 F.2d 489, 498 (7th Cir.), *cert. denied,* 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986). Plaintiff's complaint does not satisfy this requirement.

Paragraph 19 of the complaint merely alleges that the individual defendants "conducted and participated, directly and indirectly, in the conduct of Nalco's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d)."

Even the most generous interpretation of this boilerplate allegation would not enable it to survive the motion to dismiss, for the complaint is bare of factual allegations from which one might infer that defendants agreed among themselves to conduct Nalco's affairs through a pattern of racketeering activity. The Court has previously noted that the complaint's occasional allegation that a particular defendant acted with the knowledge of another defendant does not support the conclusion that defendants agreed to join in the object of the scheme which has been alleged in this case, i.e. the misappropriation of plaintiff's trade secret. *See* page 1515, *supra.* Moreover, even if the allegations were sufficient to support the conclusion that defendants conspired to defraud Davis Chemical, the allegations would nonetheless fail to state a claim under § 1962(d) in light of the Court's conclusion that the alleged endeavor to misappropriate the formula for REX–121A does not qualify as a pattern of racketeering activity. *See* § IV(A)(2), *supra.*

#### D. *Pendent State Law Claim*

■■■ In addition to the RICO count, the complaint includes a state law count alleging unfair competition. Defendants ask that the Court dismiss that claim given the inadequacy of plaintiff's RICO allegations, which supply the basis for federal jurisdiction. "The general rule is that when the federal claims are dismissed before trial, the district court should relinquish jurisdiction over any pendent state-law claim rather than resolve it on the merits." *Martin–Trigona v. Champion Federal Savings & Loan Assoc.,* 892 F.2d 575, 578 (7th Cir. 1989), *citing United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Given that this suit has not proceeded beyond the pleading stage, the Court deems dismissal appropriate.[24]

---

**24.** Defendants have also requested the Court to strike plaintiff's claims for equitable relief, correctly contending that such relief is unavailable to private plaintiffs under RICO. *See, e.g., De-Ment v. Abbott Capital Corp.,* 589 F.Supp. 1378, 1381–83 (N.D.Ill.1984) (Marshall, J.); *Kaushal v. State Bank of India,* 556 F.Supp. 576, 581–84 (N.D.Ill.1983) (Shadur, J.). *See also In re Frede-man Litigation,* 843 F.2d 821, 828–830 (5th Cir.

1988) (preliminary injunctive relief unavailable under RICO); *Religious Technology Center v. Wollersheim,* 796 F.2d 1076, 1080–1089 (9th Cir. 1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987) (equitable relief unavailable under RICO). Plaintiff has argued that even so, equitable relief would be available on its state law claim for unfair competition. However, in view of the fact that the Court is

## V. CONCLUSION

For the reasons set forth above, the Court finds that Count One of plaintiff's complaint fails to state a cause of action under the RICO statute, 18 U.S.C. § 1961 *et seq.*, and therefore dismisses that Count along with the pendent state law claim for unfair competition in Count Two. Pursuant to Fed.R.Civ.P. 15(a), plaintiff may file an amended complaint consistent with the dictates of Fed.R.Civ.P. 11 no later than December 7, 1990. If plaintiff fails to file an amended complaint on or before that date, the Clerk shall enter an order of final judgment dismissing this case.

dismissing the pendent claim, this argument is rendered moot.